DICK FISCHER DEVELOPMENT NO. 2, INC., Appellant,

v.

DEPARTMENT OF ADMINISTRATION, State of Alaska, Appellee.

No. S–4349.

Supreme Court of Alaska.

Sept. 4, 1992.

---

Erin B. Marston, John Spencer Stewart, Stafford Frey Cooper & Stewart, Anchorage, for appellant.

Ross A. Kopperud, Asst. Atty. Gen., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

Dick Fischer Development No. 2, Inc. (Fischer) sued the State of Alaska to recover full bid preparation costs and other damages when the State cancelled a large of-

fice construction project.[1] The State cross-claimed seeking reimbursement for partial bid preparation costs paid to Fischer. In granting the State's summary judgment motion, the superior court held that the State's cancellation of the project did not entitle Fischer to bid preparation costs or other damages. It also ordered Fischer to repay the State. Fischer appeals this decision. We affirm.

## I. FACTS AND PROCEEDINGS

The State planned to construct a large office building, the Anchorage Office Complex (AOC), in downtown Anchorage. The State solicited bids for the project and identified Fischer as the low bidder. The State awarded the project to Fischer; however, the unsuccessful bidders filed bid protests pursuant to 2 AAC 15.100.[2] Before the bid protests could be resolved, the State cancelled the AOC project.

Fischer claimed that he had incurred over $850,000 in bid preparation costs and post-award expenses by the time the State cancelled the project. In an effort to settle adverse claims and retain good will in the construction industry, the State agreed to pay Fischer and other claimants reasonable bid preparation costs. In her decision, Eleanor Andrews, Commissioner of the Department of Administration, cited the project's "long and unfortunate history" and noted that this was the State's third unsuccessful solicitation of bids for the AOC project. Since the bidders spent considerable time and money preparing their bids, Commissioner Andrews felt that it was "fundamentally unfair" to ask them to bear the full cost of the State's indecisiveness. According to a letter from the Commissioner to Fischer, the decision to pay bid preparation costs was not based on legal liability but on "independent policy considerations."

Fischer and two other bidders submitted claims for bid preparation costs. The State formed an audit committee to review the bidders' claims and determine accurate payments. In light of the substantially different computation methods used by the bidders to calculate their claims, the committee suggested two payment options. The first option was to provide the companies with specific guidelines as to what would be considered a compensable expense. This would require the companies to recalculate their claims. The second option was to make equal payments to each claimant regardless of the actual bid preparation costs. Commissioner Andrews chose the second option and paid each bidder $238,-222. The amount was determined by dividing the funds appropriated to the AOC project by the number of bidders submitting claims. Acceptance of the payment did not require the recipient to release any further claims. However, the State expressly reserved the right to modify the decision to pay partial bid preparation costs if a claim was filed later.[3]

In July 1985 Fischer filed a claim with the Department of Administration seeking damages for breach of contract, lost profits, and bid preparation costs. The State

---

1. This case is before us for the second time. In *Dick Fischer Dev. v. Department of Admin.*, 778 P.2d 1153 (Alaska 1989) (*Fischer I*), we held that the State's acceptance of Fischer's bid for the Anchorage Office Complex (AOC) did not create a binding contract. *Id.* at 1155. Fischer was the successful bidder in the State's solicitation for bids on the AOC project. When the State cancelled the project, Fischer sued the State for lost profits, breach of contract, and bid preparation costs. *Id.* at 1154 & n. 1. The State was awarded partial summary judgment. *Id.* However, the claim for bid preparation costs was not resolved in *Fischer I*, and it is now before this court. In addition, Fischer filed an amended complaint seeking damages for the State's alleged violation of Fischer's due process rights.

2. 2 AAC 15.100(a) (repealed 1988) provided that "[a]n aggrieved bidder may, within five days after award of a contract, appeal to the department for hearing."

3. In her letter to Fischer informing it of the State's decision to pay partial bid preparation costs, Commissioner Andrews stated that Fischer would be required to sign an acknowledgment form to receive the funds. The form apparently stated that if a claim were filed, the State could dispute the bidders entitlement to any bid preparation costs and, if successful, require the bidder to remit all or part of the payment to the State. There is nothing in the record, however, indicating that Fischer ever signed the acknowledgment form.

rejected Fischer's claim without providing an administrative hearing. In response, Fischer filed a claim in the superior court. After the breach of contract claim was decided by this court, Fischer amended its complaint to include damages for denial of due process based on the State's cancellation of its administrative hearing. The State counterclaimed for reimbursement of the $238,222 paid to Fischer and filed a motion for summary judgment. The superior court granted the State's motion and ordered Fischer to repay the money. Fischer appeals the decision.[4]

## II. DISCUSSION

### A. *Fischer is not entitled to bid preparation costs.*

■ Fischer argues that it is entitled to a refund of its bid preparation costs because the State's decision to cancel the office project was arbitrary and unreasonable. When a State agency solicits bids, it impliedly contracts to give those bids fair and honest consideration. *King v. Alaska State Housing Authority*, 633 P.2d 256, 263 (Alaska 1981). In *King*, the plaintiffs sued the Alaska State Housing Authority (ASHA) for damages resulting from the rejection of their bid to develop the Eastchester area of Anchorage. *Id.* at 258. In 1964, ASHA developed an urban renewal plan for the Eastchester area and, pursuant to the plan, condemned the land on which the project was to be built. *Id.* The plaintiffs owned part of the condemned land. *Id.* The renewal plan required ASHA to give preferential consideration to bids submitted by former owners. *Id.* The plaintiffs submitted a bid, but ASHA awarded the project to a competing developer. *Id.* The plaintiffs sued for bid preparation costs, arguing that ASHA did not give their bid fair and honest consideration.

*Id.* at 261. The superior court granted ASHA's motion for summary judgment. *Id.* at 259. We reversed, holding that a solicitation of bids creates an implied contract to give all bids fair and honest consideration. *Id.* at 263. We stated that if the government's rejection was arbitrary and capricious, the bidder was entitled to bid preparation costs. *Id.* To aid in identifying a wrongful rejection, we adopted the arbitrary and capricious standard outlined in *Keco Industries, Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200 (1974). *King,* 633 P.2d at 263 n. 7. In *Keco,* the court stated that in evaluating the governmental action, the following factors should be considered: 1) subjective bad faith on the part of the officials, depriving the bidder of fair and honest consideration of the proposal; 2) proof that there was no reasonable basis for the administrative decision; 3) the amount of discretion entrusted to procurement officials; and 4) violation of a pertinent statute. *Keco,* 492 F.2d at 1203–04.

The issue in this case is whether there was a reasonable basis for the State's decision to cancel the AOC project.[5] The State gives three reasons for cancelling the project: lack of legislative support, problems with financing, and impropriety surrounding the bidding process. We consider any of these reasons to be enough to justify the State's cancellation of the project.

■ Fischer argues that, according to the Department of Law, legislative resistance to the project was legally irrelevant; therefore, lack of legislative support is not a valid reason for cancelling the AOC project. Although legislative approval was not required for the procurement of lease space, there were valid reasons for seeking legislative approval. First, construction of the AOC would have had a significant impact on the State's fiscal affairs over a period of 40 years. The project involved

---

4. In reviewing an award of summary judgment, this court must determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *Drake v. Hosley,* 713 P.2d 1203, 1205 (Alaska 1986). All reasonable inferences of fact must be drawn in favor of the nonmoving party. *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985).

5. *King* dealt with an improperly rejected bid, not a project cancellation as in this case. The rationale for creating an implied promise to not reject bids arbitrarily (loss of time and resources involved in bid preparation) applies equally to the circumstances presented here. *King,* 633 P.2d at 263.

substantial costs and a complex long term financing arrangement. In addition, the legislature would have had to appropriate funds annually to ensure the success of the project. If the legislature did not appropriate funds for the lease every year, the lease would have terminated.[6] Although current legislative support for the project would not have guaranteed future funding, lack of support in the initial stages indicated the possibility of future funding problems. For these reasons, cancellation of the project for lack of legislative support was neither arbitrary nor capricious.

■ The State's second reason for cancelling the project involved financing. The State's ability to meet the obligations set out under the lease agreement was questionable considering the legislature's lack of support, and state officials were otherwise unsure how the project would be financed.

■ We agree that the lack of a viable funding arrangement was a legitimate reason for the State to cancel the project. *See Weber v. City of Philadelphia*, 437 Pa. 179, 262 A.2d 297 (1970) (court held that city's rejection of all bids for sports stadium because of city's inability to finance project was not arbitrary and capricious).

■ The State's third reason for cancellation was a problem surrounding ex parte communication between former Commissioner Rudd and Al Parrish, a one time agent of Fischer. Assistant Attorney General Rubini determined that the communication between Rudd and Parrish was enough to fatally taint the bidding process and require cancellation of the project.

Fischer argues implicitly that the company did not gain a competitive advantage from the communication; therefore, it was not a valid reason for the State to cancel the project. Fischer states that at the time of the conversation, Parrish was neither an agent nor an employee of the company. Assuming that Fischer did not gain a competitive advantage from the communication between Parrish and Rudd, the issue becomes whether the mere appearance of impropriety is enough to taint the entire bidding process.

We discussed this issue in *McBirney & Assoc. v. State*, 753 P.2d 1132 (Alaska 1988). In *McBirney*, we held that a demonstrated impropriety justified cancellation of a contract between the State and McBirney & Associates. *Id.* at 1137. In reaching our conclusion, we cited *NKF Engineering, Inc. v. United States*, 805 F.2d 372 (D.C.Cir.1986). In *NKF*, the court noted that the appearance of impropriety was reason enough to disqualify a bidder. *Id.* at 376. The goal of the competitive bidding process is "to prevent fraud, collusion, favoritism and improvidence in the administration of public business." *McBirney*, 753 P.2d at 1135–36 (quoting *Gostovich v. City of West Richland*, 75 Wash.2d 583, 452 P.2d 737, 740 (1969)). Even the appearance of impropriety threatens the goals of the process and Fischer cannot legitimately claim that the ex parte communication did not create the appearance of impropriety. We hold, therefore, that the concern over impropriety in the bidding process was sufficient to support the State's decision to cancel the project.[7]

---

**6.** The AOC lease agreement contained a standard termination for non-appropriation provision. The provision provided that "[i]n the event of non-appropriation by the legislature, the agreement shall terminate with no further obligation to make payments."

**7.** Fischer also argues that the State cancelled the project to avoid the cost of resolving bid protests and to escape scrutiny for possible improprieties surrounding the AOC project. As evidence to support its argument, Fischer submitted a letter expressing the State's concern about the high cost of resolving the bid protests. However, in the same letter, Anselm Staack, Deputy Commissioner of the Department of Ad-

ministration, discussed the difficulties of proceeding with the project given the lack of legislative support. So long as the State had some valid reasons for cancelling the project, it makes no difference that other, possibly invalid, reasons played a part in the State's decision. Given the existence of valid reasons to cancel the project, the decision was not arbitrary or unreasonable.

Fischer has offered no evidence to support the theory that the State cancelled the project to avoid scrutiny. Fischer likens this case to the *McBirney* case, and argues that the State was afraid the AOC project would be similarly challenged. While both cases involve similar pro-

### B. *Fischer must repay the $238,222 tendered for bid preparation costs.*

■ When Fischer filed his claim for bid preparation costs, the State counterclaimed for reimbursement of the $238,222 paid to Fischer. The superior court ordered Fischer to reimburse the State. Fischer argues that it should not have to repay the money because the State promised to pay undisputed claims for bid preparation costs.

Essentially, Fischer's argument assumes a contract between Fischer and the State based on the State's promise. In order to have a valid contract, consideration is required. *See Hall v. Add–Ventures, Ltd.,* 695 P.2d 1081, 1087 n. 9 (Alaska 1985). Fischer did not give any consideration for the State's promise to pay undisputed claims for bid preparation costs. Neither the State nor Fischer claim that the payment was made to settle existing claims for costs. In fact, Fischer was not required to relinquish any future claims against the State and is now litigating those claims before this court.

There is also no detrimental reliance argument. The Restatement (Second) of Contracts § 90(1) (1979) states:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Detrimental reliance is required to make the State's promise binding. Fischer alleges no such reliance, therefore, the State's promise to pay undisputed claims is not enforceable.[8]

### C. *Fischer is not entitled to damages for denial of due process of law.*

■ Finally, Fischer asserts a denial of its due process rights arising from the State's unilateral cancellation of its administrative hearing. Fischer relies on *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), to support its claim for damages. *See also Davis v. Passman,* 442 U.S. 228, 98 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (allowing claim for damages for violation of Fifth Amendment due process clause). In *Bivens,* the Supreme Court allowed a claim for damages resulting from a violation of the Fourth Amendment of the United States Constitution. *Bivens,* 403 U.S. at 397, 91 S.Ct. at 2005. In *King,* we noted that the federal courts have been reluctant to extend the *Bivens* decision where alternative remedies are available. *King,* 633 P.2d at 261 n. 5 (citing *Hearth, Inc. v. Department of Public Welfare,* 612 F.2d 981, 982 (5th Cir.1980)). We are also hesitant to extend the *Bivens* decision, and will not allow a claim for damages except in cases of flagrant constitutional violations where little or no alternative remedies are available. In this case, Fischer had other remedies available. When the State cancelled its administrative hearing, Fischer appealed to this court for relief. Therefore, Fischer has received a full opportunity to present his claims for bid preparation costs and has not been denied due process.

We affirm the superior court's award of summary judgment to the State. We also affirm the superior court's order for Fischer to reimburse the State.

AFFIRMED.

■

---

jects, the facts in *McBirney* are significantly different from this case. Therefore, it is not reasonable to assume that the State feared the same legal and political consequences involved in the *McBirney* case.

**8.** There is a clear alternative basis for affirming the superior court's order requiring Fischer to repay the State. As previously noted, the acknowledgement form that Fischer was required to sign to receive the partial bid preparation costs expressly provided for remittance of the money to the State if a court determined that no costs were owed by the State. We do not decide the issue on these grounds, however, because the record contains nothing to show that Fischer actually signed the form.