**PAN–ALASKA CONSTRUCTION, INC., Appellant,**

v.

**STATE of Alaska, DEPARTMENT OF ADMINISTRATION, DIVISION OF GENERAL SERVICES, Appellee.**

No. S–6082.

Supreme Court of Alaska.

March 24, 1995.

Brent A. Johnson, The Law Offices of Royce & Brain, Anchorage, for appellant.

Ross A. Kopperud and Rhonda F. Butterfield, Asst. Attys. Gen., Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

MOORE, Chief Justice.

## I. *INTRODUCTION*

This case concerns an alleged abuse of administrative discretion by the Department of Administration (DOA) in its handling of a contractor's claim for reimbursement of reasonable bid preparation costs. This is the second time that the contractor, Pan–Alaska Construction, Inc. (Pan–Alaska), has appealed its case to this court. *See Pan–Alaska Constr., Inc. v. State, Dep't of Admin.,* Mem. Op. & J. No. 537 (Alaska, February 27, 1991) (*Pan–Alaska I*). In *Pan–Alaska I,* we reversed the superior court's denial of Pan–Alaska's claim and remanded with instructions for the DOA to afford the contractor an administrative hearing. *Id.* at 4–5.

Following the ordered hearing, the hearing officer denied Pan–Alaska's claim, finding that Pan–Alaska had failed to prove that the State was liable for the contractor's bid preparation costs under former AS 44.77.010(c). Pan–Alaska appealed, arguing that in light of the DOA's decision to reimburse three other claimants for costs expended in preparing bids for the same procurement, the denial of its claim violated the corporation's right to equal protection. The superior court affirmed the DOA's decision. We also affirm, holding that Pan–Alaska has not proved its entitlement to bid preparation costs under either a statutory or equal protection theory.

## II. FACTS AND PROCEEDINGS

The involved history of this case spans over ten years of administrative and legal proceedings. In late 1984, the DOA requested that contractors submit bids to design and build the Anchorage Office Complex (AOC), a procurement that the State had previously cancelled twice. Five contractors submitted proposals, including Pan–Alaska. The DOA sent a notice of award to Dick Fischer Development No. 2, Inc. (Dick Fischer), but terminated the project less than three months later in June 1985. The State has since cited several reasons for cancelling the AOC project, including a lack of legislative support and problems with financing. *Dick Fischer Dev. No. 2., Inc. v. Department of Admin.*, 838 P.2d 263, 266 (Alaska 1992) (case arising out of same cancelled procurement).

In response to the cancellation, within four months Dick Fischer and two unsuccessful bidders other than Pan–Alaska submitted claims to the DOA for bid preparation costs. DOA regulations require that claims for reimbursement be submitted within six months of the date the services were provided. AS 44.77.010(a); 2 AAC 25.010(b). Former AS 44.77.010(c)[1] provided the standard by which aggrieved bidders could recover bid preparation costs, but required claimants to prove that their bid proposals were rejected "wrongful[ly]" or that the bid solicitation was cancelled in an "arbitrary and unreasonable" manner.

After considering the three bidders' claims, DOA Commissioner Eleanor Andrews decided to partially reimburse their bid preparation costs not as a matter of statutory entitlement, but rather due to "overriding policy concerns." In an October 1985 memorandum to Governor William Sheffield, she expressly discounted any liability the DOA might have to the bidders, but acknowledged that, in her judgment, the DOA should reimburse their bid costs:

I have concluded that, under the circumstances of this procurement, it is fair and appropriate for the state to pay reasonable bid preparation costs. The project has a long and unfortunate history of false starts dating well before this administration. . . . Each procurement prompts bidders to spend considerable time and money toward preparation of a proposal. . . . I believe it fundamentally unfair to ask bidders to bear the economic burden of the state's repeated decision to cancel the procurement in midstream. Bidders have repeatedly responded in good faith on AOC procurements, and we should respond accordingly if we expect bidders to have confidence in subsequent procurements for major state office facilities. . . . *My decision, in sum, is not based on a finding of legal liability, but on independent policy considerations.*

(Emphasis added.)

A team of auditors reviewed the three contractors' claims to assess their reasonable expenses. Due to the complexity of the structure of each claim, by February 1986 the Commissioner opted to extend each claimant a uniform payment of $238,222. This amount was determined by dividing the total funds appropriated for the AOC project by the number of bidders who had submitted claims. *Dick Fischer Dev. Co.*, 838 P.2d at 265.

Pan–Alaska submitted its claim for reimbursement of bid preparation costs in April 1986, ten months after the cancellation of the AOC project. DOA Commissioner Andrews denied Pan–Alaska's $303,380 claim by a letter dated May 22, 1986, on the grounds that it was submitted after the expiration of the

1. AS 44.77.010(c) was repealed in 1986. *See* Ch. 106, § 67, SLA 1986.

six-month time limitation set by DOA regulation 2 AAC 25.010(b), and that it failed to articulate a basis for legal entitlement under AS 44.77.010(c). The Commissioner noted that her "decision to pay limited bid preparation expenses to the three bidder groups who submitted timely claims has no bearing on [Pan–Alaska's] legal entitlement to recoup bid preparation costs."

Pan–Alaska appealed the DOA's denial of its claim. In an October letter, Commissioner Andrews granted Pan–Alaska the opportunity to show at an administrative hearing "good cause" why its claim for bid preparation costs should be accepted as timely. If "good cause" could be shown, Pan–Alaska would be given a second hearing on the merits of its claim.

At the administrative hearing in March 1987, the DOA stipulated that Pan–Alaska had shown sufficient "good cause" to obtain a waiver of any applicable time limitation on its claim for bid preparation costs. The DOA formally "accepted" Pan–Alaska's claim, but noted that the stipulation was "binding upon the parties only as to the issue of timeliness."

Instead of proceeding to a hearing on the merits, counsel for the DOA then denied Pan–Alaska's claim by letter. It stated that even though Pan–Alaska's claim was regarded as timely, the "policy decision made by former Commissioner Andrews during the Sheffield administration to pay a portion of the bid preparation cost of some of the bidders on the AOC" would not be carried forward by the new administration of Governor Steven Cowper. Moreover, it concluded that Pan–Alaska lacked any other factual or legal basis for entitlement, and that any applicable administrative procedures should be considered "exhausted."

Pan–Alaska filed suit against the DOA in June 1987. In its motion for summary judgment, Pan–Alaska argued that by reimbursing all claimants except Pan–Alaska, the DOA failed to treat similarly situated parties alike, thereby violating the contractor's right to equal protection under article I, section 1 of the Alaska Constitution.

The State filed a cross-motion for summary judgment, contending that Pan–Alaska must show that the DOA cancelled the AOC procurement arbitrarily or capriciously in order to recover bid preparation costs under AS 47.77.010(c). Moreover, the State asserted the defense that Commissioner Andrews' original policy to voluntarily reimburse bidders for bid preparation costs constituted an ultra vires act in violation of article IX, section 13 of the Alaska Constitution.[2]

At oral argument, the superior court agreed with Pan–Alaska that there was no rational basis for distinguishing between the three bidders that received payment and Pan–Alaska, which did not. However, the court granted summary judgment in favor of the State, on the basis that the Commissioner's original policy to repay costs was beyond the scope of statutory authority, and therefore, the court was powerless to order the continuation of "unlawful acts."

Pan–Alaska appealed the decision to this court. In *Pan–Alaska I*, we reversed and remanded, ruling that the DOA had improperly reneged on its promise to provide Pan–Alaska a hearing on the merits of its claim. Mem.Op. & J. No. 537 at 4–5. In doing so, we declined to reach the substance of Pan–Alaska's claim until the contractor had an opportunity to exhaust its administrative remedies. Finally, we noted that even if there were no statutory authority for the DOA to pay Pan–Alaska's bid costs, Pan–Alaska had the right to attempt to obtain a judgment and present it to the Alaska Legislature for possible payment. *Id.* at 5.

On remand, and following the ordered hearing, the hearing officer reviewed the evidence and concluded that Pan–Alaska failed to meet its twofold burden under former AS 44.77.010(c): (1) that the State acted arbitrarily or capriciously in cancelling the procurement, and (2) that the amount requested be substantiated by supporting documentation.

In its subsequent appeal to the superior court, Pan–Alaska reasserted its contention

---

**2.** Article IX, section 13 commands that "[n]o money shall be withdrawn from the treasury except in accordance with appropriations made by law," and that "[n]o obligation for payment of money shall be incurred except as authorized by law."

that the DOA violated its right to equal protection. The court affirmed the hearing officer's determination that Pan–Alaska failed to present substantial evidence of its statutory entitlement to bid preparation expenses. In addition, the court refused to address Pan–Alaska's equal protection argument. In the superior court's view, our decision to remand Pan–Alaska's claim for a full administrative hearing implied that we found the contractor's equal protection argument had no merit.

Pan–Alaska appeals the lower court's decision affirming the DOA's denial of its claim for reasonable bid preparation costs. We now consider the merits of Pan–Alaska's claim for the first time.

## III. DISCUSSION

### A. Equal Protection

Pan–Alaska contends that when the DOA excluded it from the policy to partially reimburse contractors for their reasonable bid preparation costs, the DOA denied Pan–Alaska its right to equal protection under the Alaska Constitution. Alaska Const. art I, § 1.[3] Specifically, Pan–Alaska argues that despite the fact that its economic interest in this case is traditionally entitled to the lowest level of judicial scrutiny, under Alaska law, cost savings alone is not sufficient to justify discrimination by the government. Herrick's Aero–Auto–Aqua Repair Serv. v. State, Dep't of Transp. & Pub. Facilities, 754 P.2d 1111, 1114 (Alaska 1988) (in the absence of a legitimate, independent distinction, cost savings alone do not justify selective enforcement of state regulations).

■ We apply a sliding scale approach to equal protection questions arising under the Alaska Constitution. State v. Ostrosky, 667 P.2d 1184, 1192–93 (Alaska 1983). Under this method, "[a]s the right asserted becomes 'more fundamental' or the classification scheme employed becomes 'more constitutionally suspect,' the challenged law 'is subjected to more rigorous scrutiny at a more

elevated position on our sliding scale.'" State, Dep't of Revenue v. Cosio, 858 P.2d 621, 629 (Alaska 1993) (quoting Ostrosky, 667 P.2d at 1193).

■ Although economic and commercial interests traditionally result in minimal scrutiny under our state equal protection analysis, Alaska's approach is more protective of individual rights than that employed in the federal courts. State v. Anthony, 810 P.2d 155, 157 (Alaska 1991). Even under the lowest form of judicial scrutiny, the means chosen must bear a "fair and substantial" relation to the attainment of a legitimate government objective. Cosio, 858 P.2d at 629.

■ The DOA's objectives in dealing with the failed AOC procurement were legitimate. In order to maintain goodwill with the construction industry, the DOA chose to equitably distribute funds otherwise appropriated for the AOC to contractors who had in good faith responded to the cancelled procurement. It was within the DOA's discretion to plan to divide the available funds equally among all deserving claimants. Because the bid cost reimbursement would deplete a fixed pool of funds, however, the DOA needed to know with reasonable promptness the total number of contractors pursuing valid claims. The DOA therefore had a sound administrative interest in setting a deadline beyond which the policy would be unavailable as a means of recovery.

The DOA's ultimate refusal to extend the reimbursement policy to Pan–Alaska's claim bore a "fair and substantial relation" to the DOA's goals. First, Pan–Alaska submitted its claim for bid costs much later than the contractors who successfully recouped their expenses. In October 1985, when Commissioner Andrews formulated the DOA policy to reimburse claimants for reasonable costs expended in preparing bids for the AOC project, three bidders had already submitted formal claims. Pan–Alaska was not among them. For reasons of its own, the contractor did not submit its claim for reasonable bid costs for another seven months.

---

**3.** Under article I, section 1 of the Alaska Constitution, "all persons are equal and entitled to equal rights, opportunities, and protection under the law." Corporations that have received per-

mission to do business within Alaska are entitled to equal treatment under this clause. Lynden Transport, Inc. v. State, 532 P.2d 700, 706 (Alaska 1975).

By the time Pan–Alaska did submit its claim for reasonable bid costs, the six-month time limitation imposed by state regulation upon the submission of reimbursement claims had long since passed. 2 AAC 25.010(b). Although the six-month period would have ordinarily applied to claims proceeding on a theory of statutory liability such as under former AS 44.77.010(c), it was reasonable for the DOA to use the same timeframe as a benchmark deadline for claims proceeding under the State's limited voluntary reimbursement policy. Under this approach, the window of opportunity for all claims became closed on a uniform date. Because Pan–Alaska clearly missed this six-month deadline, we conclude that Pan–Alaska's delay in submitting its claim supplied a reasonable ground for different treatment by the DOA.

Pan–Alaska places great significance on the March 1987 stipulation in which the DOA formally "accepted" Pan–Alaska's claim as timely. The contractor implies that because the agency agreed to consider the merits of Pan–Alaska's claim, the DOA cannot rely upon the contractor's status as a latecomer as the basis for excluding it from the reimbursement policy. We disagree with this interpretation of the stipulation.

When the DOA accepted Pan–Alaska's claim as timely, the agency waived only whatever limitations defense it had in 2 AAC 25.010(b). In doing so, the DOA did not alter its position that Pan–Alaska was not entitled to bid costs under Commissioner Andrews' October 1985 policy. Rather, the DOA afforded Pan–Alaska an opportunity where it had none, to prove its entitlement to bid preparation costs by merit under former AS 44.77.010(c). At that late date, restricting Pan–Alaska to showing its entitlement to bid costs under statute was more than reasonable. Pan–Alaska's claim was submitted well beyond the usual six-month time limitation, and the funds which had been made available by the DOA under its earlier voluntary reimbursement policy had already been disbursed.

In its handling of the contractor's claim for reasonable bid preparation costs, the DOA treated Pan–Alaska fairly and provided it the same opportunity as it did the other AOC bidders. Based upon the foregoing analysis, we conclude that the DOA's decision to exclude Pan–Alaska from the State's bid cost reimbursement policy survives the minimal scrutiny test required by the Alaska Constitution.

### B. *Statutory Entitlement*

■ Except in the exceedingly rare circumstances where an agency opts to voluntarily reimburse claimants for reasonable bid preparation costs, the standard manner by which a contractor can recover bid preparation costs from the State is by way of statutory authority. Before its repeal in 1986, AS 44.77.010(c) allowed individuals to make a claim against the state government for "wrongful rejection of a bid proposal or for an arbitrary or unreasonable cancellation of a bid solicitation." This is the standard that applies to Pan–Alaska's claim.

On remand, the administrative hearing officer framed the issues as follows: whether Pan–Alaska could prove by a preponderance of the evidence (1) that the State acted arbitrarily or capriciously in cancelling the award of the AOC contract; and (2) that the bid preparation costs Pan–Alaska claimed represented actual costs incurred. The State argues that Pan–Alaska put forth very little evidence to support either of these propositions, and as such, we should uphold the hearing officer's denial of the contractor's claim. In *State, Alcoholic Beverage Control Board v. Decker*, 700 P.2d 483 (Alaska 1985), this court held that "we have consistently adhered to the substantial evidence on the whole record test ... for reviewing administrative fact findings in quasi-judicial proceedings subject to the APA." *Id.* at 486.

According to the administrative hearing officer, Pan–Alaska devoted "little time" to its task of showing that the State cancelled the AOC project in an arbitrary or unreasonable manner. On the other hand, the State offered the testimony of former Assistant Attorney General John Rubini, who presented several justifications for the State's decision. Among these were financing problems and a lack of support from the Alaska Legislature.

The hearing officer's ultimate decision that the State was justified in cancelling the AOC procurement was further bolstered by this court's decision handed down less than two months later in *Dick Fischer Development No. 2, Inc. v. Department of Administration,* 838 P.2d 263 (Alaska 1992). Dick Fischer, the successful bidder in the AOC procurement, sued the DOA for breach of contract, lost profits, and full bid preparation costs after the State cancelled the AOC construction project. *Id.* at 265. We denied the contractor's claim for full bid preparation costs, holding that of the State's three reasons for terminating the project, lack of legislative support, financing problems, and impropriety surrounding the bidding process, "any of these reasons [would] be enough to justify the State's cancellation of the project."[4] *Id.* at 266.

As to its second obligation, Pan–Alaska did supply documents to support the amount claimed as its bid preparation costs. However, with the exception of one $200 expense, an expert witness for the State testified that Pan–Alaska's documentation was insufficient to render the costs reimbursable. Although the State provided Pan–Alaska with guidance on how to substantiate its claim, the contractor's documentation failed to verify the exact nature, purpose, and relevance for each expense. The hearing officer apparently placed significant weight on the expert's testimony that the series of credit card slips and invoices presented by Pan–Alaska lacked the level of reliability required by the DOA under the Federal Acquisition Regulations and Generally Accepted Accounting Principles.

On appeal, Pan–Alaska argues that its financial documents were subjected to greater scrutiny than those of any other claimant requesting costs following the cancellation of the AOC project. This complaint lacks merit. The State's expert testified that he personally participated in the audit of the three successful AOC claimants when the DOA chose to voluntarily reimburse reasonable bid costs. He explained that not only were Generally Accepted Accounting Principles used to assess the other claimants' records, but

also that if Pan–Alaska had presented its claim contemporaneously with the others, Pan–Alaska's documentation still would have been deemed insufficient.

The superior court correctly ruled on appeal that "[t]here is more than substantial evidence in the record to support [the hearing officer's] determination." Because we conclude that Pan–Alaska failed to show that the State cancelled the AOC bid solicitation arbitrarily or unreasonably and otherwise failed to adequately substantiate its claimed costs, we also defer to the agency's conclusion that Pan–Alaska failed to establish its entitlement to recoup bid preparation costs under state statute.

## IV. *CONCLUSION*

Pan–Alaska has not satisfactorily demonstrated its entitlement to reasonable bid preparation costs from the DOA under either an equal protection or statutory theory. For this reason, the judgment of the trial court affirming the decision of the hearing officer is AFFIRMED.

---

4. Interestingly, we also required Dick Fischer to disgorge the $238,222 it received under Commissioner Andrews' policy to partially reimburse aggrieved AOC claimants. *Id.* at 268. We held

that because Fischer did not provide consideration for the DOA's promise to pay bid costs, no enforceable contract was created between the contractor and the State. *Id.*