**Chet ADKINS, Appellant,**

v.

**Karl STANSEL, Individually and as Assistant Warden of Florence Correctional Center, Appellee.**

No. S–13114.

Supreme Court of Alaska.

April 10, 2009.

Chet Adkins, Appellant, pro se.

Craig S. Howard, Richmond & Quinn, Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

WINFREE, Justice.

## I. INTRODUCTION

An Alaska prisoner in a private Arizona prison facility sued a prison official for allegedly violating his constitutional rights by denying visitation with a relative who had traveled from Alaska. The superior court dismissed the suit for failure to state a cause of action upon which relief might be granted, stating that "an isolated incident which prevented visitation due to an acknowledged oversight by prison officials is not a Constitutional violation under Alaska law." Because the prisoner's complaint must be read to allege an intentional rather than a mistaken denial of visitation, it was error to dismiss the suit on the basis that the prison official's action was mere mistake. We reverse and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

Chet Adkins is an Alaska prisoner incarcerated in a private Arizona correctional facility operated by Corrections Corporation of America (CCA). In November 2005 Adkins's cousin, James Guinn, contacted Adkins about visiting the prison during an upcoming trip Guinn and his wife were making from Bethel to Denver, Colorado. Guinn then scheduled a visit with Adkins through CCA employee Karl Stansel, an assistant warden at the Arizona facility. The Guinns arrived at the prison as scheduled but were denied access to Adkins, and visitation did not occur.

Adkins wrote a letter to the prison warden complaining of the incident and asking that: (1) an apology be extended to the Guinns; (2) the Guinns be reimbursed for their time and expense in traveling to Arizona for the failed visit; and (3) CCA "[u]ndertake a thorough and unflinching examination of [the prison's] policies and possible cultural prejudices toward the family and community ties of prisoner[s]." In reply the warden apologized to Adkins but stated he was unable to approve the reimbursement request, characterizing the incident as a "miscommunication ... between the supervisors" and an "unfortunate oversight on our part."

Adkins filed a prison grievance, seeking: (1) monetary compensation to the Guinns for their time and expenses in attempting to visit Adkins; and (2) compensatory and punitive damages to Adkins for violation of his constitutional right to rehabilitation and for breach of CCA's and Stansel's fiduciary obligations to protect his rights. The State of Alaska, Department of Corrections (DOC) denied Adkins's grievance, referring to the "unfortunate incident" as "an oversight" and noting that the warden "has apologized ... for the mistake." The Office of the Commissioner of DOC upheld the denial of the appeal, stating that "[a]n error was made, apologies have been given, and assurances have been extended to try to prevent a reoccurrence of the problem."

Adkins then sued Stansel in his personal and official capacities, alleging Stansel violated Adkins's "right to rehabilitation, as provided by the Alaska State Constitution" and breached his fiduciary duty to protect Adkins's constitutional right to rehabilitation. Attached to Adkins's verified complaint were: (1) his letter to the warden; (2) the warden's response; (3) his grievance; (4) DOC's denial of his grievance; and (5) the DOC Commissioner's Office's denial of his appeal.

Stansel filed a motion to dismiss, conceding the incident of failed visitation but arguing that no relief could be granted. Stansel as-

serted that he owed Adkins no relevant fiduciary duty and that "one inadvertent isolated incident [of failed visitation] stemming from a miscommunication does not rise to the level of a constitutional violation [of the right to rehabilitation]."

In opposition to the dismissal motion, Adkins clarified that his suit was based solely on his constitutional right to rehabilitation under article I, section 12 of the Alaska Constitution.[1] Adkins stressed the importance of visitation to a prisoner's rehabilitation efforts, noting that even an isolated denial of visitation is important when visitation opportunities are infrequent. Adkins stated that through affidavit testimony he could establish the denied visitation's adverse impact on his family's willingness to attempt subsequent visitations.

The superior court granted Stansel's motion to dismiss Adkins's suit. The court did not directly address Adkins's fiduciary duty claim, presumably considering it a part of Adkins's constitutional claim, but concluded that "an isolated incident which prevented visitation due to an acknowledged oversight by prison officials is not a Constitutional violation under Alaska law."

Adkins appeals the dismissal of his constitutional claim.

## III. STANDARD OF REVIEW

We review de novo "decisions granting or denying motions to dismiss."[2] We have explained that: "[i]f, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient.

We must presume all factual allegations of the complaint to be true and make all reasonable inferences in favor of the non-moving party."[3] Because motions to dismiss are disfavored, "[a] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief."[4] Even if the relief demanded is unavailable, the claim should not be dismissed as long as some relief might be available on the basis of the alleged facts.[5]

Pleadings of pro se litigants are held to less stringent standards than those of lawyers.[6] When "the essence of a *pro se* litigant's argument is 'easily discerned'" from the briefing, the trial court should consider that argument when "the applicable law is well established and the opposing party would not be prejudiced" by consideration of the issues raised.[7]

## IV. DISCUSSION

### A. Constitutional Background

Article I, section 12 of the Alaska Constitution provides prisoners a fundamental rehabilitation right.[8] In *Brandon v. State, Department of Corrections* we recognized that a prisoner's right to visitation is an important component of the fundamental right to rehabilitation,[9] but we declined to define the required scope or possible limitations of the right to visitation, leaving that for "future adjudications."[10] In *Larson v. Cooper* we upheld a prison's security-based policy prohibiting physical contact between prisoners and visitors other than " 'a short

---

1. Article I, § 12 provides in relevant part, "Criminal administration shall be based upon the following: the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation."

2. *Varilek v. City of Houston*, 104 P.3d 849, 851 (Alaska 2004).

3. *Belluomini v. Fred Meyer of Alaska, Inc.*, 993 P.2d 1009, 1014 (Alaska 1999) (quoting *Kollodge v. State*, 757 P.2d 1024, 1026 (Alaska 1988) (internal punctuation omitted)).

4. *Catholic Bishop of N. Alaska v. Does 1–6*, 141 P.3d 719, 722 (Alaska 2006).

5. *Miller v. Johnson*, 370 P.2d 171, 172 (Alaska 1962).

6. *Rathke v. Corr. Corp. of Am.*, 153 P.3d 303, 308–09 (Alaska 2007).

7. *Id.* at 309.

8. *Abraham v. State*, 585 P.2d 526, 531–33 (Alaska 1978).

9. 938 P.2d 1029, 1032 n. 2 (Alaska 1997).

10. *Id.*

embrace upon initial contact and again upon departure,'"[11] concluding that reasonable limits on contact visitation for prisoners were "within the sound discretion of prison administrators" and did not violate the constitutional right to rehabilitation.[12] We also held that temporary suspension of contact visitation as a form of discipline does not violate the constitutional right to rehabilitation,[13] noting that temporary and non-arbitrary withdrawals of visitation privileges are accepted methods of prison discipline.[14]

In *Rathke v. Corrections Corp. of America* we held that an Alaska prisoner housed in an Arizona CCA prison had the right to bring certain constitutional claims against CCA and its employees.[15] Although federal law allows direct tort actions for some violations of the federal constitution, we have not recognized a private right of action for damages based on a violation of the Alaska Constitution.[16] We have indicated only that we will not recognize such a remedy if the constitutional violation is not flagrant or if alternative remedies exist.[17]

### B. Adkins's Complaint

Adkins alleged in his complaint that: (1) the Guinns wanted to visit him during a trip from Bethel to Denver; (2) Stansel approved the visit and the Guinns were on Adkins's approved visitor list; (3) the Guinns took the time and incurred the expense to detour through Arizona to visit Adkins; and (4) the Guinns arrived at the prison to visit Adkins but were turned away. Adkins alleged that "[p]roviding the State and Federal rights of its detainees" is "an operating expense" that "reduces profits." Adkins also alleged that CCA has "complete control over the circumstances and conditions of confinement" at the Arizona prison. Adkins described his letter to the warden and the response he received as well as the grievance he filed regarding the incident; he attached copies of relevant documents to his complaint.

Adkins's attached letter to the prison warden contained the following statement:

> What compounds this [denial of visitation rights] is that it is not an isolated incident. It is only the latest in a string of events, which taken separately can reasonably be explained away. Together, I feel they demonstrate a disturbing indifference toward the family and community ties of those in your care and custody.

Adkins's letter also referred to a "systemic lack of concern" for prisoners' family ties and suggested "possible cultural prejudices," citing as examples the rescheduling of the prison's Native Potlatch and Black History Month celebrations. Adkins's letter asserted that moving the celebrations from weekends to weekdays made relatives' participation more difficult. Adkins's letter also referred to a specific denial of requested contact-visitation with his son, who was about to be redeployed to Iraq.

Adkins concluded his complaint by asserting that the facts sufficiently demonstrated Stansel had violated his constitutional right to rehabilitation. Adkins requested compensatory and punitive damages and "[o]ther such relief as the Court deems just and proper."

### C. Stansel's Dismissal Motion and Arguments on Appeal

In the superior court Stansel acknowledged that visitation is an important compo-

11. 90 P.3d 125, 126 (Alaska 2004).

12. *Id.* at 133–34.

13. *Id.* at 135.

14. *Id.* at 135–36 (citing *Overton v. Bazzetta*, 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003)).

15. 153 P.3d 303, 309.

16. *Lowell v. Hayes*, 117 P.3d 745, 753 (Alaska 2005); *Thoma v. Hickel*, 947 P.2d 816, 824 n. 5 (Alaska 1997) ("Direct tort actions for violation of certain provisions of the federal constitution have been recognized. The leading case is *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics* [403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)]. We have neither adopted nor rejected the *Bivens* approach with respect to state constitutional violations." (citations omitted)).

17. *Lowell*, 117 P.3d at 753 (quoting *Dick Fischer Dev. No. 2 v. State, Dep't of Admin.*, 838 P.2d 263, 268 (Alaska 1992)).

nent of a prisoner's constitutional right to rehabilitation. Stansel then pointed out that limited withdrawal of visitation privileges for disciplinary purposes is an acceptable limitation on the constitutional right to rehabilitation and extrapolated that "one inadvertent isolated incident stemming from a miscommunication does not rise to the level of a constitutional violation." [18]

Citing *Brandon*[19] for the proposition that visitation is a critical element of a prisoner's constitutional right to rehabilitation, Adkins argued in his opposition to Stansel's motion to dismiss that: (1) even small amounts of visitation are important to a prisoner's rehabilitation; (2) visitation opportunities for Alaska prisoners housed in Arizona are infrequent; and (3) he could establish through affidavit testimony that the Guinns decided not to make additional trips to the prison to try to see Adkins because of the incident. Adkins concluded that "any impingement" on visitation has a corrosive effect on the relationships upon which a prisoner's success after release is "proven to depend." At no point did Adkins concede the failed visitation was the result of a mere mistake.

As noted the superior court granted the dismissal motion, stating that "an isolated incident which prevented visitation due to an acknowledged oversight by prison officials is not a Constitutional violation under Alaska law."

On appeal Adkins maintains he should be given the opportunity to prove that Stansel's actions were more than mere negligence and to show a pattern of conduct regarding visitation denials for Alaska prisoners in the Arizona CCA facility. Stansel maintains the denial of the Guinns' visitation with Adkins resulted from "an admittedly inadvertent miscommunication" and that the single mistaken denial of visitation cannot be the foundation of a claim that Adkins's constitutional right to rehabilitation was violated.

### D. Disposition of Appeal

Viewing Adkins's complaint (with its attachments[20]) in the light most favorable to him, and taking into account that Adkins is a pro se litigant, we conclude Adkins alleged (1) an intentional and unjustified denial of visitation motivated by CCA's concern about costs, and (2) that this denial was part of a pattern of conduct showing deliberate indifference to the visitation rights of Adkins and other Alaska prisoners housed in Arizona. We do not express an opinion on whether these allegations of intentional misconduct provide a basis for injunctive, declarative, or monetary relief under the state constitution—this was not raised either in the superior court or on appeal.[21]

■ We do conclude it was error to dismiss Adkins's constitutional claim at the pleading stage on the rationale that the failed visitation was the result of mere mistake rather than of intentional misconduct. Adkins never alleged or conceded that Stansel made a mistake. Although Adkins attached to his complaint copies of communications from prison and DOC officials in which persons other than Stansel stated in conclusory fashion that the failed visitation was the re-

---

**18.** Stansel did not suggest that the denial of the Guinns' visit with Adkins was pursuant to a prison policy or for any purpose legitimate to the proper functioning and administration of a correctional facility.

**19.** 938 P.2d 1029, 1032 n. 2 (stating that visitation privileges are an important component of a prisoner's constitutional right to rehabilitation).

**20.** Attachments to a complaint are properly considered a part of the complaint in connection with a motion to dismiss. *Kaiser v. Umialik Ins.*, 108 P.3d 876, 878 n. 1 (Alaska 2005).

**21.** We do note that we have consistently stated a plaintiff would have to show both a flagrant constitutional violation and the unavailability of other remedies to establish a claim for damages based on a constitutional violation. *Lowell*, 117 P.3d at 753 (quoting *Dick Fischer Dev. No. 2*, 838 P.2d at 268); *see also Peoples v. CCA Det. Ctrs.*, 422 F.3d 1090, 1101 (10th Cir.2005) (en banc) (holding that "there is no implied private right of action for damages under *Bivens* against employees of a private prison for alleged constitutional deprivations when alternative state or federal causes of action for damages are available to the plaintiff" and reasoning that "[s]uch a claim is therefore properly dismissed under Rule 12(b)(6)"). Thus, even if Adkins is able to demonstrate that the denied visitation was not a mere mistake but was intentional and part of a pattern of conduct, he still may not have a claim for damages based on a constitutional violation.

sult of a mistake by unidentified supervisors, those conclusory and unsupported statements are insufficient to demonstrate that Stansel actually made a mistake and cannot be used against Adkins in that manner to support a motion to dismiss.[22]

It may be that denial of the Guinns' visitation with Adkins was the result of a mere mistake by Stansel. It may be that an inadvertent and isolated denial of visitation, even when visitation is a rare commodity for Alaska prisoners in Arizona prisons, cannot be a violation of a prisoner's constitutional right to rehabilitation redressable by injunctive, declaratory, or monetary relief. These conclusions might be reached upon a summary judgment motion in which Stansel presents sufficient admissible and uncontradicted evidence to prove he made a mere mistake that was not part of a pattern of visitation denials to Alaska prisoners held in the Arizona prison. These conclusions cannot be reached on Adkins's pleadings alone, and therefore Stansel's motion to dismiss should not have been granted.[23]

## V. CONCLUSION

We REVERSE the superior court's dismissal of Adkins's constitutional claim and REMAND for proceedings consistent with this opinion.

---

**22.** *Cf. Odom v. Fairbanks Mem. Hosp.*, 999 P.2d 123, 130–31 (Alaska 2000) (affirming grant of motion to dismiss physician's defamation claim based on allegedly false report to a medical data bank when allegations of and attachment to complaint unequivocally demonstrated facial truth of the report).

**23.** Our resolution of this appeal does not bar Stansel from again moving to dismiss Adkins's claims for failure to state a claim upon which relief can be granted, but the motion must be based on our stated interpretation of Adkins's complaint. Alaska R. Civ. P. 12(g), (h)(2).