**STATE of Alaska, DEPARTMENT OF CORRECTIONS, Petitioner,**

v.

**Paul HEISEY, Respondent.**

No. S–13656.

Supreme Court of Alaska.

March 2, 2012.

Jonathan A. Woodman, Assistant Attorney General, Anchorage, Janell M. Hafner, Assistant Attorney General, and Daniel S. Sullivan, Attorney General, Juneau, for Petitioner.

Ted Stepovich, Anchorage, for Respondent.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

## OPINION

CARPENETI, Chief Justice.

### I. INTRODUCTION

Two correctional officers allegedly injured an inmate within a jail. The inmate filed a complaint asserting several tort claims

against the State and the two officers. Pursuant to a statute allowing the State to substitute as defendant for any State employee that is certified as acting within the scope of employment, the Attorney General certified the officers as acting within the scope of their employment and substituted the State as the defendant. The State then filed a motion to dismiss on sovereign immunity grounds. While the motion was pending, the inmate moved to amend his complaint to substitute state constitutional claims for the tort claims. The superior court granted the motion to amend, ruling that the inmate may have a damages claim for violation of his state constitutional rights under the circumstances of the case. In the same order, the superior court partially granted and partially denied the motion to dismiss. The State petitioned for review of the superior court's legal conclusions. We accepted the petition and requested briefing on three issues: (1) whether the Attorney General's certification is subject to judicial review; (2) whether the inmate's claims arise out of an assault or battery for which the State is immune; and (3) whether a state constitutional claim for damages exists under the circumstances of this case.

We conclude that the Attorney General's certification is subject to judicial review, that some of the inmate's claims arise out of an assault or battery for which the State is immune, and that a damages claim under the state constitution does not exist under the circumstances of this case. In light of these conclusions, we vacate the superior court's order on the motion to amend and motion to dismiss, and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

In October 2006, an incident occurred between inmate Paul Heisey and two correctional officers at the Anchorage Correctional Complex. In a complaint filed in October 2008, Heisey claimed that while he was in restraints and being escorted by the officers along a corridor, the officers either performed a "take down" and "slammed [him] to the floor face first" or negligently caused him to fall, resulting in serious physical injury and disfigurement. The complaint stated several alternate theories of tort liability against both the correctional officers and the State of Alaska. These included that (1) the State owed a duty to Heisey to ensure that its correctional officers were properly trained in the use of force, and breached that duty by negligently training and supervising the officers; (2) the State, by and through its officers, negligently used excessive force, thereby causing injury to Heisey; (3) the correctional officers "negligently handled Heisey when they allowed him to fall on his face"; and (4) the actions of the officers "constituted an intentional assault."

In December 2008, the State submitted to the superior court the Attorney General's certification pursuant to AS 09.50.253(c).[1] The Attorney General determined that the correctional officers had been acting within the scope of their employment, and the State substituted itself as the party defendant for the officers. The State also filed a motion to dismiss on the grounds that Heisey's claims arose out of the officers' alleged assault and battery and the State was immune under AS 09.50.250(3).[2]

In opposing the motion to dismiss, Heisey argued that the State had mischaracterized the complaint as alleging assault and battery alone. He noted that he had also alleged the use of excessive force, and argued that the

---

1. AS 09.50.253(c) provides:

 Upon certification by the attorney general that the state employee was acting within the scope of the employee's office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon the claim in a state court is considered an action or proceeding against the state under the provisions of this title, and the state is substituted as the party defendant. The civil action or proceeding certified under this subsection is subject to the same limitations and defenses applicable to an action or proceeding against the state. The attorney general or the attorney general's designee shall defend the civil action or proceeding on behalf of the state.

2. AS 09.50.250(3) provides that an action may not be brought against the State if it "arises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

State was not immune from claims arising out of the use of excessive force. The State replied that all claims in the complaint did arise out of an alleged assault or battery, the excessive force claims included, and therefore the State was immune to all claims in the complaint. Neither party mentioned Heisey's claim that the individual defendants negligently handled him and caused his injuries through their negligence.

While a decision was pending on the motion to dismiss, Heisey moved to amend his complaint. The new complaint would have substituted alleged violations of the Alaska Constitution for his tort claims. The State opposed Heisey's motion, arguing that the State was immune from all the claims in the amended complaint. The State also argued that Alaska has never recognized a Bivens–type claim for alleged violations of the Alaska Constitution. Heisey responded that AS 09.50.250 grants no immunity for alleged violations of the Alaska Constitution. He also asserted that, while Alaska has never recognized a private right of action for state constitutional torts, neither has it rejected such a cause of action.

Superior Court Judge Sen K. Tan held oral argument on the motion to dismiss and the motion to amend. At that time the court sua sponte inquired whether the Attorney General's certification was subject to judicial review. As neither party had briefed this issue, the superior court ordered supplemental briefing on the availability of judicial review under AS 09.50.253(c).

In September 2009, the superior court issued an order concluding (1) that the State was "clearly immune from suit on the intentional tort" claim under AS 09.50.250(3); (2) that the State was immune from Heisey's negligent training and supervision claim under Alaska case law; and (3) that the Attorney General's AS 09.50.253(c) certification that a state employee was acting within the scope of employment was not subject to judicial review. The superior court dismissed

Heisey's non-constitutional claims but nevertheless permitted Heisey's motion to amend, concluding that this may be an instance where a Bivens–type claim exists. In the same order, the court partially denied and partially granted the State's motion to dismiss.

The State moved for reconsideration, claiming that the superior court had unlawfully permitted Heisey to amend his complaint to add state Bivens-type claims. Heisey responded that state constitutional tort claims are not barred by AS 09.50.250, and that he had met the requirements for a Bivens action. The court denied the State's motion.

The State petitioned this court for review of the superior court's order on the motion to dismiss and the motion to amend. Heisey's response asked us to accept review and to consider additional issues not raised in the State's petition. We granted the petition and ordered briefing of three issues: (1) whether the Attorney General's certification under AS 09.50.253 is subject to judicial review; (2) whether Heisey's claims arise out of an alleged assault and battery for which the State is otherwise immune; and (3) whether Heisey is entitled to bring a damages claim for violation of his state constitutional rights under the circumstances of this case.

## III. STANDARD OF REVIEW

■■■■ Matters of constitutional or statutory interpretation are questions of law, which we review de novo.[3] When reviewing a question of law, it is our "duty to adopt the rule of law that is most persuasive in light of precedent, reason and policy."[4]

## IV. DISCUSSION

### A. The State's Scope–Of–Employment Certification Is Subject To Judicial Review.

When a lawsuit is filed against state employees, AS 09.50.253(c) allows the Attorney

---

**3.** *Bradshaw v. State, Dep't of Admin., Div. of Motor Vehicles,* 224 P.3d 118, 122 (Alaska 2010) (quoting *State v. Jeffery,* 170 P.3d 226, 229 (Alaska 2007)); *State Commercial Fisheries Entry Comm'n v. Carlson,* 65 P.3d 851, 858 (Alaska 2003) (citing *Tesoro Petroleum Corp. v. State,* 42

P.3d 531, 535 (Alaska 2002)); *Sampson v. State,* 31 P.3d 88, 91 (Alaska 2001).

**4.** *Ruckle v. Anchorage Sch. Dist.,* 85 P.3d 1030, 1034 (Alaska 2004) (quoting *Jackson v. Power,* 743 P.2d 1376, 1379 n. 5 (Alaska 1987)).

General to determine whether the individually named defendants were acting within the scope of their employment during the conduct giving rise to the lawsuit. If they were, the Attorney General certifies to the superior court that the defendants were acting within the scope of their employment, and substitutes the State for the individually named defendants. The lawsuit proceeds against the State as the remaining defendant.

Alaska Statute 09.50.253 is derived from the Westfall Act,[5] a nearly identical federal statute that grants immunity to federal employees from tort lawsuits.[6] While the United States Supreme Court has held that the federal certification is reviewable,[7] Alaska has never addressed whether state certification is subject to judicial review. The State argues that the certification is not reviewable. Heisey maintains that it is, relying largely on United States Supreme Court case law and policy grounds.

■ After reviewing the statute's plain language, its legislative history, and Supreme Court case law, we conclude that certification is reviewable. Our analysis proceeds from a presumption of judicial review in the absence of clear legislative intent to the contrary.[8]

**1. The plain language, legislative history, and legislative intent of AS 09.50.253(c) are silent on the subject of judicial review.**

■ When interpreting a statute, we look first at the statute's language, legislative history, and legislative purpose.[9] Here, we conclude that all three are silent on the judicial review of affirmative certifications.

Alaska Statute 09.50.253(c) provides, in relevant part:

Upon certification by the attorney general that the state employee was acting within the scope of the employee's office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon the claim in a state court is considered an action or proceeding against the state under the provisions of this title, and the state is substituted as the party defendant.

The State, arguing against review, claims that the plain meaning of the word "is," in the verbs "is considered" and "is substituted," indicates that the substitution is automatic and unreviewable. We disagree. The plain language does establish that the substitution occurs immediately once a defendant has been certified. However, the language says nothing about the reviewability of the certification.

The legislative history of AS 09.50.253 is similarly silent. The statute originated in the Alaska Senate as S.B. 338 during Alaska's 23rd legislature. At a Senate Committee meeting conducted in 2004, Assistant Attorney General Gail Voigtlander testified that the bill would benefit both employees and the public. By removing employees from the lawsuit as quickly as possible, S.B. 338 would minimize the disruption to their lives that would result from being part of protracted litigation, and protect their reputations by precluding the need to disclose their involvement in a lawsuit. In addition, because employees would no longer be involved in and distracted by the lawsuit, they would serve the public more effectively than they would without a substitution. Overall, the bill was designed to increase efficient use of the State's resources, and of employees' and attorneys' time.[10]

The State interprets the Senate committee proceedings as dismissing the possibility of judicial review. In the State's view, the bill's purpose was to substitute the State for state

---

**5.** 28 U.S.C. § 2679(d)(1).

**6.** *See* Minutes, House Labor & Commerce Comm. Hearing on H.B. 488, 23rd Leg., 1st Sess. (Mar. 1, 2004) (Testimony of Gail Voigtlander, Assistant Attorney Gen.).

**7.** *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995).

**8.** *See infra* notes 32–35 and accompanying text.

**9.** *Shehata v. Salvation Army*, 225 P.3d 1106, 1114 (Alaska 2010).

**10.** *See* Minutes, Sen. State Affairs Standing Comm. Hearing on S.B. 338, 23rd Leg., 1st Sess. (Mar. 11, 2004) (Testimony of Gail Voigtlander, Assistant Attorney Gen.).

employees "to the extent possible." Allowing judicial review "would strip the employee of the immunity and relief from litigation that the legislature sought to provide." The superior court agreed, holding that "it is clear that the statute was to preclude some claims against the State, and to shield the [Attorney General]'s decision to certify from judicial review." We disagree that the Senate minutes prove legislative intent to close off judicial review. Though it is clear that the legislature was trying to provide an avenue for state employees to be dismissed from litigation, the Senate minutes simply do not mention judicial review of a decision to certify.

The House committee minutes from H.B. 488, the companion House bill to S.B. 388, are equally silent on whether an affirmative certification is reviewable.[11] Overall, the legislative history and legislative intent of AS 09.50.253 are inconclusive.

## 2. The presence of a provision for judicial review of negative certifications does not preclude the reviewability of affirmative certifications.

Though AS 09.50.253 contains no language pertaining to the judicial review of affirmative certifications, AS 09.50.253(d) provides judicial review for employees who are denied certification.[12] The State claims that the absence of a similar provision for affirmative certifications must have been intentional, and leads to the conclusion that the legislature did not intend that affirmative certifications be reviewable. But we find another interpretation equally possible. The presence of the provision may simply reflect the legislature's desire to provide an additional layer of protection for state employees. After all,

protecting state employees was the basis on which the Attorney General's office argued for the legislation in the first place. In sum, the legislature's silence on judicial review of affirmative certifications is inconclusive.

## 3. The United States Supreme Court's holding that the federal certification statute is subject to judicial review is persuasive authority.

■ The federal counterpart to AS 09.50.253, the Westfall Act, substitutes the United States as the defendant for torts performed within the scope of employment. The Westfall Act provides:

> Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant.[13]

The primary difference in wording between the federal statute and the Alaska statute is in the verbs used: The former uses "shall be" ("shall be deemed an action against the United States") and the latter uses "is" ("is considered an action ... against the state"). Because the Westfall Act and AS 09.50.253 contain nearly identical language, and because AS 09.50.253 was based on the Westfall Act, federal decisions construing the Westfall Act are persuasive authority in construing AS 09.50.253.[14]

11. *See* Minutes, House Labor & Commerce Comm. Hearing on H.B. 488, 23rd Leg., 1st Sess. (Mar. 1, 2004) (Testimony of Gail Voigtlander, Assistant Attorney Gen.).

12. *See* AS 09.50.253(d) ("If the attorney general refuses to make the certification under (c) of this section, the state employee may, at any time before trial, petition the superior court to find and certify that the employee was acting within the scope of the employee's office or employment at the time of the incident out of which the claim arose.").

13. 28 U.S.C. § 2679(d)(1).

14. *See Kinegak v. State, Dep't of Corr.*, 129 P.3d 887, 890 (Alaska 2006) ("The Federal Tort Claims Act has language that is nearly identical to the language in AS 09.50.250(3), and federal decisions construing the FTCA are persuasive authority in construing the Alaska statute."); *Alaska Transp. Comm'n v. Alaska Airlines, Inc.*, 431 P.2d 510, 512 (Alaska 1967) (noting that because an Alaska statute was "patterned in many respects" after a federal statute, "federal decisions construing the Federal Act may be persuasive in construing analogous provisions of the Alaska Act").

In *Gutierrez de Martinez v. Lamagno*,[15] the Supreme Court held that the Attorney General's certification is reviewable.[16] There, three Colombian citizens filed suit against a special agent of the United States Drug Enforcement Administration following a car accident in Colombia.[17] Acting on behalf of the Attorney General, the U.S. Attorney certified that the agent had been acting within the scope of his employment, resulting in the substitution of the United States as the defendant.[18] After considering the language of the statute and policy considerations, the Supreme Court determined that the Attorney General's certification was reviewable.[19]

The State attempts to distinguish *Gutierrez*, but its argument is not persuasive. The State argues that *Gutierrez* turned on two aspects of the Westfall Act that are not found in the Alaska statute. First, the Westfall Act states that the Attorney General's certification "shall conclusively establish scope of office or employment for purposes of removal,"[20] and the State argues this language necessarily implies that certification is reviewable for other purposes. Because AS 09.50.253 does not contain a similar provision, the State argues that the same analysis does not apply. Second, the federal statute provides that the United States "*shall* be substituted" as the defendant, rather than "*is* substituted" as in the Alaska statute. The State argues that the use of "shall" explains the Supreme Court's conclusion in *Gutierrez*, as it meant that "the statute could be interpreted as *authorizing*, but not *requiring* substitution." In the State's view, the Alaska statute's use of "is" rather than "shall" precludes ambiguity.

The State's argument is unconvincing. It misinterprets the Supreme Court's analysis and, as Heisey suggests, ignores the policy considerations that were central to the case. In *Gutierrez*, the Court began from the presumption that "when a Government official's determination of a fact or circumstance—for example, 'scope of employment'—is dispositive of a court controversy, federal courts generally do not hold the determination unreviewable. Instead, federal judges traditionally proceed from the strong presumption that Congress intends judicial review."[21] The Court then examined the language of the statute "to determine whether it overcomes the presumption favoring judicial review, the tradition of court review of scope certifications, and the anomalies attending foreclosure of review."[22] Finding both interpretations plausible, the Court did not initially endorse one side's interpretation over the other.[23] For instance, the defendant in *Gutierrez* interpreted the word "shall" in the Westfall Act—in "shall be deemed an action against the United States" and "shall be substituted"—to mean that the substitution is *not* reviewable, apparently taking "shall" to mean "must."[24] The Court observed that "shall" generally means "must," but can also be used in place of "should," "will," or even "may."[25] Ultimately concluding that the Westfall Act's language is "reasonably susceptible to divergent interpretation," the Court decided instead to "adopt the reading that accords with . . . [the] basic principle[ ] that executive determinations generally are subject to judicial review."[26]

Along similar lines, the Court noted that section 2679(d)(2) states that "certification of the Attorney General shall conclusively establish scope of office or employment for

---

15. 515 U.S. 417, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995).

16. *Id.* at 423, 115 S.Ct. 2227.

17. *Id.* at 420–21, 115 S.Ct. 2227.

18. *Id.* at 420, 115 S.Ct. 2227.

19. *Id.* at 436–37, 115 S.Ct. 2227.

20. 28 U.S.C. § 2679(d)(2).

21. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 424, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995) (citations and internal quotation marks omitted).

22. *Id.* at 430, 115 S.Ct. 2227.

23. *Id.* at 434, 115 S.Ct. 2227.

24. *Id.* at 432–33, 115 S.Ct. 2227.

25. *Id.* at 434 n. 9, 115 S.Ct. 2227.

26. *Id.* at 434, 115 S.Ct. 2227.

purposes of removal," while no such language appeared with regard to substitution.[27] However, while the Court conceded that this *may* support the conclusion that the substitution is reviewable, the Court declined to commit to this interpretation.[28] Ultimately, the Supreme Court concluded that "[t]he Westfall Act's language is far from clear," prompting it to decide the case on policy grounds.[29]

Given the similarity between AS 09.50.253(c) and the Westfall Act, we are persuaded by the Supreme Court's reasoning in *Gutierrez*: We conclude that the plain language and legislative history of AS 09.50.253(c) do not clearly favor or disfavor judicial review, and we therefore look to analogous cases and policy considerations to guide our determination.

In several cases in the past we have reserved the right to judicial review within the context of administrative agency determinations.[30] Here, the Attorney General's decision to certify is analogous to an administrative adjudication. In an administrative adjudication, the legislature has delegated decision-making authority to a body other than the courts. Similarly, AS 09.50.253(c) delegates authority to the Attorney General to make a legal determination: whether an employee was acting within the scope of his or her employment.

In *Alyeska Ski Corp. v. Holdsworth*,[31] we considered the reviewability of leasing decisions by the Director of the Division of Lands and the Commissioner of Natural Resources. We concluded that "it was not intended that Alaska's courts be divested of their constitutionally vested duty to insure compliance with the laws of Alaska." [32]

In *K & L Distributors, Inc. v. Murkowski*,[33] in spite of a statute *denying* review of an administrative action, we noted our constitutional duty to ensure administrative compliance with Alaska's laws and concluded:

> It is the constitutionally vested duty of this court to assure that administrative action complies with the laws of Alaska. We would not be able to carry out this duty to protect the citizens of this state in the exercise of their rights if we were unable to review the actions of administrative agencies simply because the legislature chose to exempt their decisions from judicial review. The legislative statement of finality is one which we will honor to the extent that it accords with constitutional guarantees. But if the administrative action is questioned as violating, for example, the due process clause, we will not hesitate to review the propriety of the action to the extent that constitutional standards may require.[34]

Turning to policy considerations, we agree with the United States Supreme Court that not permitting judicial review would lead to "ominous" consequences more severe than the alternative:

> The local United States Attorney, whose conflict of interest is apparent, would be authorized to make final and binding decisions insulating both the United States and federal employees ... from liability while depriving plaintiffs of potentially meritorious tort claims.... Nor should we assume that Congress meant federal courts to accept cases only to stamp them "Dismissed" on an interested executive official's unchallengeable representation. The statute is fairly construed to allow petitioners to

27. *Id.*

28. *Id.*

29. *Id.* ("We recognize that both sides have tendered plausible constructions of a text most interpreters have found far from clear.... Because the statute is reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review and that mechanical judgments are not the kind federal courts are set up to render.") (internal citations omitted).

30. *See Alaska Pub. Interest Grp. v. State,* 167 P.3d 27, 38–39 (Alaska 2007) (citing *Alyeska Ski Corp. v. Holdsworth,* 426 P.2d 1006, 1011–12 (Alaska 1967); *K & L Distribs., Inc. v. Murkowski,* 486 P.2d 351, 357 (Alaska 1971)).

31. 426 P.2d 1006 (Alaska 1967).

32. *Id.* at 1012.

33. 486 P.2d 351 (Alaska 1971).

34. *Id.* at 357 (internal citation omitted).

present to the District Court their objections to the Attorney General's scope-of-employment certification, and we hold that construction the more persuasive one.[35]

We follow the same rationale here. These policy considerations are all the more important in Alaska, where our underlying law guarantees plaintiffs greater rights against the government than plaintiffs have under federal law. In cases against the U.S. government, immunity is the rule and liability the exception.[36] But government liability is the rule in Alaska, while immunity is the exception.[37] Precluding judicial review would stand contrary to this principle. It would allow the Attorney General to be the final arbiter of a case-dispositive issue, contrary to the presumption of judicial review. Finally, judicial review helps preserve the integrity of the certification process. In *Gutierrez*, "the Attorney General herself urge[d] review, mindful that ... the incentive of her delegate to certify is marked." [38] In the absence of clear legislative intent to the contrary, and to avoid any due process

concerns, we hold that the Attorney General's certification is reviewable.

**4. We remand the validity of the scope of employment certification for review by the superior court in the first instance.**

 The superior court has done no fact-finding in this case; the proceedings were stayed pending resolution of the legal issues before this court. In light of our conclusion that the Attorney General's certification is judicially reviewable, we remand to the superior court the question of whether the correctional officers were acting within the statutorily defined scope of their employment at the time of the incident. Looking to the methodology adopted by the federal courts,[39] we establish these principles: (1) the standard of review for the certification decision should be de novo; (2) the burden of proof lies upon the plaintiff challenging certification to prove that the defendants were not acting within the scope of their employment; (3) the court should apply the factors in AS 09.50.253(h)(1) [40] for the scope-of-em-

35. *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 436–37, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995).

36. *Hayes v. United States*, 539 F.Supp.2d 393, 397 (D.D.C.2008) ("The United States is immune from suit unless it waives its sovereign immunity through an act of Congress.") (citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994)).

37. *Kinegak v. State, Dep't of Corr.*, 129 P.3d 887, 889 (Alaska 2006).

38. 515 U.S. at 417, 115 S.Ct. 2227.

39. *See, e.g., Maron v. United States*, 126 F.3d 317, 323 (4th Cir.1997); *Garcia v. United States*, 88 F.3d 318 (5th Cir.1996); *Kimbro v. Velten*, 30 F.3d 1501, 1505 (D.C.Cir.1994); *Schrob v. Catterson*, 967 F.2d 929, 935 (3rd Cir.1992); *Wilson v. Jones*, 902 F.Supp. 673, 678–80 (E.D.Va.1995).

40. AS 09.50.253(h)(1) provides:
 (h) In this section,
 (1) "acting within the scope of the employee's office or employment" means acts or omissions
 (A) that the state employee is employed or authorized to perform;
 (B) of the state employee that occur substantially within the authorized time and space limit;

 (C) that are activated by a purpose to serve the state; and
 (D) that do not constitute acting, or failing to act, with wilful, reckless, or intentional misconduct, or with gross negligence or malice;
 . . .
 This definition is narrower than the definition found in our scope-of-employment case law pertaining to other non-state employers. *See, e.g., Taranto v. N. Slope Borough*, 909 P.2d 354, 358–60 (Alaska 1996) (discussing our adoption of the Restatement (Second) of Agency rules for an employer's vicarious liability for intentional torts of employees); *Doe v. Samaritan Counseling Center*, 791 P.2d 344, 346–50 (Alaska 1990) (holding that intentional sexual misconduct by therapist might be within scope of employment under Restatement (Second) of Agency rules), *clarified by VECO, Inc. v. Rosebrock*, 970 P.2d 906, 924 n. 36 (Alaska 1999) (disapproving of possible broad interpretation and requiring employees's act to have at least some motivation to serve employer). *See also Laidlaw Transit, Inc. v. Crouse Ex Rel. Crouse*, 53 P.3d 1093, 1098–99 (Alaska 2002) (affirming trial court's finding that school bus driver was within scope of employment when driving bus while impaired by marijuana use, and quoting from an Arizona opinion that "[a] wrongful act committed by an employee while acting in his employer's business does not take the employee out of the scope of employment[.]'").

ployment determination; (4) the outcome should be decided by the court, not a jury; and (5) the determination should be made prior to trial.

If there are disputed issues of fact, we direct the court to hold an evidentiary hearing and make factual findings, then decide the certification question prior to trial. If no disputed issues of material fact exist, the court may resolve the issue on summary judgment.

## B. Heisey's Claims In This Appeal Arise Out Of An Alleged Assault Or Battery For Which The State Is Otherwise Immune.

### 1. The superior court did not err in characterizing Heisey's original "excessive force" claim as a claim for assault or battery.

■ Alaska Statute 09.50.250(3) grants the State immunity for a claim that "arises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." In his original complaint, Heisey advanced several alternate theories of intentional tort and negligence. The superior court grouped his claims into an "intentional tort claim" and a "negligent failure to train claim." Both, the court concluded, were barred by AS 09.50.250(3).[41]

Before the superior court, Heisey conceded that "the complaint does in fact mention assault and battery." But he also argued that in addition to assault and battery he alleged an "excessive force claim," a claim that he argued is distinct and is not barred by the State's immunity. He makes the same argument to us: "[A] claim for excessive force . . . is not a claim for assault and

battery." The State disagrees, contending that excessive force is the functional equivalent of assault or battery and that Heisey is "creatively re-naming his causes of action" in order to avoid the State's statutory immunity.

We have not yet addressed whether an "excessive force" claim is barred by the State's sovereign immunity for common law assault or battery. As the State points out, however, other jurisdictions have determined that "excessive force" claims against a state are barred by immunity statutes similar to Alaska's.[42] This is particularly true in the federal context, where a number of courts have interpreted the Federal Tort Claims Act as barring claims of "excessive force." The leading case in this area is *Stepp v. United States*,[43] in which the Fourth Circuit held that the FTCA barred an excessive force claim against the government. The court noted that "[i]t is well established that an intentional use of excessive force in making an arrest amounts to an assault and battery," and cited to cases from eight different states.[44]

■ At a general level, we agree with *Stepp* that there is no distinction between "excessive force" and "assault and battery" for purposes of the immunity statute. Alaska Statute 09.50.250(3) bars claims that "arise[ ] out of" assault or battery. In *Kinegak v. State, Department of Corrections*,[45] discussing AS 09.50.250(3) in the false imprisonment context, we interpreted the statute as immunizing the government from "claims arising out of the conduct constituting reasonably well-recognized forms of false imprisonment."[46] Here, the factual basis for Heisey's "excessive force" claims gives us reason to believe that "excessive force" in-

---

**41.** Though the superior court does not use the words "assault" or "battery" in its order, presumably the superior court found that Heisey's claims were barred by the provision for assault and battery in AS 09.50.250(3). None of Heisey's allegations resemble or could be mistaken for any of the other torts listed in AS 09.50.250(3). And both parties' briefs appear to rest on this assumption.

**42.** *See, e.g., McKenna v. Julian*, 277 Neb. 522, 763 N.W.2d 384, 391 (2009) ("[An] action based

on excessive force still arises out of claims of false arrest or battery and it is therefore barred as a matter of law by sovereign immunity.").

**43.** 207 F.2d 909 (4th Cir.1953).

**44.** *Id.* at 911.

**45.** 129 P.3d 887 (Alaska 2006).

**46.** *Id.* at 893.

cludes an assault or battery. Heisey alleged in his complaint that "without justification or provocation, two Correctional Officers ... took down Mr. Heisey and slammed him to the floor face first." To the degree that this description forms the basis for his "excessive force" claims, it fits easily into the common law definitions of assault and battery.[47]

The wording of Heisey's remaining "excessive force" claims,[48] however, alleges negligence in conjunction with excessive force: (1) that the State of Alaska breached a duty to Heisey to ensure that their officers "do not use excessive or unnecessary force in their treatment of inmates," and (2) that the officers "negligently used excessive force and caused injury and damage to [Heisey]." This formulation does not avoid the immunity bar.

We first note that regardless of the label that a claimant attaches to his or her tort, we will look first to the substance of the claim. If the substance of the claim shows that it falls within the intentional tort exceptions, "the courts will ignore this label and treat the claim as one within the list of exceptions if the pleaded facts seem to warrant." [49] Turning to Heisey's "negligent[ ] use of excessive force" claim, we hold that in spite of its wording, this is an assault or battery claim. The negligent application of too much force still implies that the alleged tort offenders intended to apply *some* degree of force, making the underlying action one of assault or battery.

In *B.R. v. State*,[50] we addressed claims that included both intentional and negligent torts. In *B.R.*, a physician's assistant sexually assaulted a female inmate while treating her at a correctional facility.[51] The physician's assistant was an employee of the Department of Corrections.[52] The inmate, B.R., reported the incident.[53] The police launched an investigation.[54] After the first incident, B.R. again experienced pain and was sent back to the jail's medical center.[55] She requested an escort as protection against the physician's assistant.[56] In spite of the request, the same physician's assistant again examined her, and again sexually assaulted her.[57] B.R. sued the department on several tort theories, including a negligent hiring claim and the failure to adequately train employees. The department moved for summary judgment, which the superior court granted on the grounds that B.R.'s claims were barred by AS 09.50.250(3). B.R. appealed.[58]

We held that AS 09.50.250(3) barred claims which "merely assert breaches of the department's duty to exercise due care in hiring, training, and supervising" the employee because such claims depended on the tort offender's employment status.[59] However, we also held that the State's immunity did not extend to theories of liability not grounded on the department's employment relation with the tortfeasor.[60] Thus, though B.R.'s

47. Alaska relies on the Restatement (Second) of Torts for the elements of assault and battery. *Taylor v. Johnston*, 985 P.2d 460, 464 (Alaska 1999). Under the Restatement definition, one commits assault if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." RESTATEMENT (SECOND) OF TORTS § 21 (1965). "Battery occurs when an actor intends to cause harmful or offensive contact with another and an offensive contact results." *Id.* at § 18.

48. Though Heisey does not identify the specific allegations in his brief before this court, he did specify them in his Opposition to Motion to Dismiss.

49. *Kinegak v. State, Dep't of Corr.*, 129 P.3d 887, 893 (Alaska 2006) (citing PROSSER & KEETON ON THE LAW OF TORTS § 131, at 1039 (5th ed.1984)).

50. 144 P.3d 431 (Alaska 2006).

51. *Id.* at 432.

52. *Id.* at 431.

53. *Id.* at 432.

54. *Id.*

55. *Id.*

56. *Id.*

57. *Id.* at 433.

58. *Id.* at 432–33.

59. *Id.* at 435.

60. *Id.*

complaint did focus on the department's duties as the physician's assistant's employer, it also implicated "a separate protective duty .... to exercise 'reasonable care for the protection of [the prisoner's] life and health.'"[61] This protective duty was

> "independent" because it ha[d] no relation to [the employee's] employment status—in other words, regardless of whether [he] was acting as a department employee, an independent contractor, a privately retained physician's aid[e], or a volunteer health care provider when he examined B.R. at the jail, the department would have had a duty to protect her and could have breached this duty by negligently exposing her to an unreasonable risk of harm from [the tortfeasor].[62]

Here, we conclude that Heisey's negligent training claim does not implicate the breach of an independent duty. The claim is entirely dependent on the State's status as the correctional officers' employer. Heisey's complaint neither implicates a separate protective duty as in *B.R.*, nor gives reason to believe that the Department may have negligently supervised its employees in general. We thus hold that Heisey's "excessive force" claims are barred by AS 09.50.250(3).[63]

**2. Heisey's state constitutional law claims are barred by the State's intentional tort immunity under AS 09.50.250(3).**

 In his amended complaint, Heisey alleged violations of the Alaska Constitution using largely the same facts as in his original complaint, but he removed the negligence claims against the individual officers. The superior court permitted Heisey to amend his complaint, ruling that he may have a *Bivens*-type state constitutional claim. The

State argues that it is immune from the claims in the amended complaint, regardless of whether they are characterized as "constitutional" torts or common law torts. In the State's view, AS 09.50.250(3) bars "*all* tort claims" against the State that arise out of an assault or battery. If plaintiffs could circumvent immunity simply by claiming a constitutional tort rather than a common law tort, this would "eviscerate the purpose and meaning of AS 09.50.250(3)."

Heisey contends that AS 09.50.250 does not provide immunity against state constitutional torts and that those claims against the State should be allowed to proceed. In addition, the amended complaint makes a constitutional tort claim for "excessive force," which Heisey says should not be characterized as an assault or battery.

After examining the plain meaning of the statute and related statutory provisions, we agree with the State.

**a. The State is immune from state constitutional torts arising out of an assault or battery.**

Article II, section 21 of the Alaska Constitution provides that "[t]he legislature shall establish procedures for suits against the State." In *Glover v. State, Department of Transportation, Alaska Marine Highway System,*[64] we held that article II waived the State's absolute immunity, and that "the legislature may specify the circumstances under which the [S]tate's less-than-absolute sovereign immunity will apply."[65] Citing to article II and *Glover*, Heisey claims that the default rule in Alaska is that the State is liable for its wrongs, and exceptions to liability must be carved out by statute. A violation of constitutional rights is a form of tort, as noted by *Adkins v. Stansel.*[66] As AS

---

**61.** *Id.* (quoting *State, Dep't of Corr. v. Johnson*, 2 P.3d 56, 59–60 (Alaska 2000)).

**62.** *Id.* at 436.

**63.** Heisey's original complaint included a pure negligence claim, alleging that "defendant [S]tate by and through its agents, the defendant correctional officers, negligently handled Mr. Heisey when they allowed him to fall on his face." We take no position on this claim, which

was not brought before us on the petition for review. On remand, Heisey is free to pursue his "negligent handling" claim and any other pure negligence claims that are not precluded by this opinion.

**64.** 175 P.3d 1240 (Alaska 2008).

**65.** *Id.* at 1246, 1248–49.

**66.** 204 P.3d 1031, 1034 (Alaska 2009).

09.50.250 does not enumerate constitutional torts among the torts the State is immune from, Heisey argues that the State is not immune from state constitutional tort claims.

■ Heisey correctly observes that in Alaska, the government generally is liable for its wrongs, while immunity is the exception. Numerous cases have made this point.[67] But in AS 09.50.250(3) the legislature has recognized an exception.[68] We are not convinced that Heisey can evade the State's statutorily defined immunity simply by characterizing his claims as constitutional violations; we must look to the statute to understand whether the grant of immunity encompasses the particular constitutional violations alleged. In construing AS 09.50.250, we look for a "construction that avoids absurdity and is consistent with a reasonable interpretation of the terms of the statute."[69]

In this case, the State provides a reasonable interpretation that is truer to the statute's language and purpose. The plain language of AS 09.50.250 states, in relevant part:

> A person or corporation having a contract, quasi-contract, or tort claim against the state may bring an action against the state in a state court that has jurisdiction over the claim.... However, an action may not be brought if the claim
>
> . . .
>
> (3) arises out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

Although any person alleging a "tort claim against the state" is authorized to bring a lawsuit against the State, claims that "arise out of assault [or] battery" are barred. If anyone alleging a *constitutional* tort claim is also subject to the limitations of this statute, then if the individual's claim arises out of assault or battery, it too would be barred. As a preliminary matter, then, we must address whether the statute contemplates constitutional torts in addition to common law torts.

■ A constitutional tort is "any action for damages for violation of a constitutional right against a government or individual defendants."[70] Constitutional torts have been recognized in the United States since at least the late 1800s, when the Civil Rights Act of 1871 authorized civil damage actions against "[e]very person who, under color of [law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."[71]

Because the word "tort" in AS 09.50.250 is unmodified, the plain language of AS 09.50.250 supports the State's contention that constitutional torts are included within the State's immunity. Additional evidence is provided by AS 09.50.253(a) and (f), which were enacted at the same time as AS 09.50.250.[72] These sections provide:

> (a) Except as provided in (f) of this section, the remedy against the state provided by AS 09.50.250 for injury or loss of property or personal injury or death arising or resulting from an act or omission of a state employee while acting within the scope of the employee's office or employment is exclusive of any other civil action or pro-

---

**67.** *See, e.g., Sea Hawk Seafoods, Inc. v. State,* 215 P.3d 333, 337 (Alaska 2009); *Kinegak v. State, Dep't of Corr.,* 129 P.3d 887, 889 (Alaska 2006); *Native Vill. of Eklutna v. Alaska R.R. Corp.,* 87 P.3d 41, 49 (Alaska 2004); *Adams v. State,* 555 P.2d 235, 244 (Alaska 1976).

**68.** *See Kinegak,* 129 P.3d at 893.

**69.** *Premera Blue Cross v. State, Dep't of Commerce, Cmty. & Econ. Dev., Div. of Ins.,* 171 P.3d 1110, 1120 (Alaska 2007).

**70.** *Brown v. State,* 89 N.Y.2d 172, 177, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (N.Y.1996).

**71.** *Imbler v. Pachtman,* 424 U.S. 409, 417 & n. 10, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). The Civil Rights Act of 1871 is now codified at 42 U.S.C. § 1981 *et seq.*

**72.** *See Bullock v. State, Dep't of Cmty. & Reg'l Affairs,* 19 P.3d 1209, 1214–15 (Alaska 2001) (noting that we "will generally construe statutes *in pari materia* where two statutes were enacted at the same time, or deal with the same subject matter.") (internal quotation marks and citation omitted).

ceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of the employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

. . . .

(f) This section does not extend or apply to a civil action or proceeding against an employee of the state that is brought for a violation of the Constitution of the United States or that is brought for a violation of a law of the state under which an action or proceeding against an employee is expressly authorized.[73]

By the statute's terms, the Alaska legislature made AS 09.50.250 the exclusive remedy for tort claims against the State, except for alleged violations of the U.S. Constitution— that is, federal constitutional torts. There is no exception, however, for *state* constitutional torts. Because AS 09.50.250 provides the exclusive remedy for actions against state employees alleging state constitutional violations, it bars state constitutional torts "arising out of a claim" for assault or battery as well.

█ We conclude that AS 09.50.250 encompasses state constitutional torts. A claim for a state constitutional violation arising out of an assault or battery is therefore also barred by the State's immunity.

**b. Heisey's state constitutional claims arise out of an assault or battery.**

If AS 09.50.250 includes state constitutional violations within its scope, then a state constitutional violation that "arises out of" assault or battery would be barred by the State's immunity. In his amended complaint, Heisey alleged that the correctional officers "performed a 'take-down' without

provocation" and "slammed plaintiff into a concrete floor, slamming his face and head into the floor and caus[ing] serious physical injury and disfigurement." Based on these facts, Heisey alleged two instances of constitutional violations. First, the correctional officers' action "constitutes the use of excessive force in violation of [a]rticle I, [s]ection 12 of the Constitution." Second, the State of Alaska violated its duty to institute "proper training programs that [e]nsure prison employees do not use excessive force and violate the constitutional rights of prisoners," which violated Heisey's due process rights and violated his "right to be free from the use of excessive force" under the Alaska Constitution.

Heisey's constitutional claims clearly arise out of an alleged assault or battery. As the State is immune from assault and battery claims, we conclude that Heisey's state constitutional claims are barred by the State's immunity.

**C. Heisey May Not Bring A *Bivens*-Type Claim Under The Circumstances Of This Case.**

█ A *Bivens* claim is a judicially created claim which gives relief to plaintiffs claiming federal constitutional violations by federal agents.[74] Where the U.S. Constitution does not explicitly provide a private action for damages, a federal court may imply such a remedy under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*,[75] *Bivens* claims derive their name from this 1971 United States Supreme Court case that was the first to recognize this doctrine. In *Bivens*, the plaintiff alleged that federal agents entered his apartment without a warrant, searched the apartment, then arrested him on an alleged drug violation.[76] No federal statute authorizes claims for violation of the Fourth Amendment, which gives the right to be free from unreasonable search and seizures. In spite of this, the Supreme

---

**73.** 28 U.S.C. § 2679(b)(1)–(2) (1988) (This language makes the Federal Tort Claims Act the exclusive remedy for federal tort claims.).

**74.** *See* Black's Law Dictionary 179 (8th ed.2004) (defining *"Bivens* action").

**75.** 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**76.** *Id.* at 389, 91 S.Ct. 1999.

Court implied a private action for damages, reasoning that the importance of the right implies that a remedy exists for violation of that right.[77] Since the Supreme Court decision, several state courts have applied *Bivens* to imply state law constitutional claims.[78] Alaska has not—while we have considered possible *Bivens*-type claims in the past, we have never found one to be viable under the facts presented.[79]

As a threshold matter, a litigant must establish two requirements before we will consider a possible *Bivens*-type claim: that "alternative remedies" do not exist; and that the constitutional violation is "flagrant." [80] We begin with the alternative remedies prong, finding that it is dispositive in this case.

### 1. Alternative remedies bar Heisey from *Bivens*-type relief.

■ The State argues that Heisey is barred from *Bivens*-type relief because he had an alternative remedy—he could have brought a 42 U.S.C. § 1983 claim, which allows plaintiffs to sue persons "act[ing] under the color of state law" for deprivations of constitutional rights. A § 1983 claim "on its face admits of no immunities," [81] and the State could not have certified the officers against such a claim. Heisey contends that a § 1983 claim is not an alternative remedy

under the meaning of *Bivens* for two reasons. First, he argues that "a claim based on a violation of the Alaska Constitution cannot be asserted in federal court under that provision." Second, he asserts that the Alaska Constitution offers broader protections than the U.S. Constitution, arguing that "this Court has an obligation to expand on state constitutional principles and to enforce and protect state constitutional rights."

We disagree with Heisey's reading of the law. With regard to Heisey's first argument, it is true that 42 U.S.C. § 1983 allows claims against state officials for violation of the U.S. Constitution, not state constitutions. However, an "alternative remedy" may include federal remedies. In *Hertz v. Beach*,[82] we recognized that the availability of a federal constitutional remedy can block a state *Bivens*-type claim. In *Hertz*, an inmate sued two nurses and a dentist for failing to give him timely or adequate dental treatment.[83] The inmate claimed violations of both the federal and Alaska cruel and unusual punishment provisions.[84] We held that "[m]edical malpractice and federal constitutional law provide adequate remedies" for the inmate's alleged state constitutional violations, and declined to find a private cause of action under the Alaska constitution.[85] Because federal constitutional claims may provide adequate remedies for state constitutional violations, Heisey's argument fails.[86]

---

**77.** *Id.* at 389, 396, 91 S.Ct. 1999.

**78.** *See generally* JENNIFER FRIESEN, STATE CONSTITUTIONAL LAW: LITIGATING INDIVIDUAL RIGHTS, CLAIMS, AND DEFENSES § 7.07 (4th ed.2006). *See, e.g., Binette v. Sabo*, 244 Conn. 23, 710 A.2d 688, 689 (1998) (direct cause of action under Art. 1, § 7 (security from searches and seizures) and Art. 1, § 9 (right of personal liberty)); *Brown v. State of New York*, 89 N.Y.2d 172, 652 N.Y.S.2d 223, 674 N.E.2d 1129, 1138–39 (1996) (direct cause of action for alleged violation of equal protection and search and seizure clauses of state constitution); *Corum v. Univ. of N. Carolina*, 330 N.C. 761, 413 S.E.2d 276, 290 (1992) (direct cause of action under state constitution's free speech clause).

**79.** *See Adkins v. Stansel*, 204 P.3d 1031, 1034 (Alaska 2009) ("Although federal law allows direct tort actions for some violations of the federal constitution, we have not recognized a private right of action for damages based on a violation of the Alaska Constitution. We have indicated only that we will not recognize such a remedy if the constitutional violation is not flagrant or if

alternative remedies exist." (internal citations omitted)). *See also Lowell v. Hayes*, 117 P.3d 745, 754 n. 30 (Alaska 2005) (noting this court's agreement with the 5th Circuit's flagrancy requirement); *Dick Fischer Dev. No. 2 v. Dep't of Admin.*, 838 P.2d 263, 268 (Alaska 1992).

**80.** *See Adkins*, 204 P.3d at 1034.

**81.** *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

**82.** 211 P.3d 668 (Alaska 2009).

**83.** *Id.* at 672.

**84.** *Id.* at 677.

**85.** *Id.* at 677 n. 12.

**86.** Our decision in *Hertz* tracks U.S. Supreme Court case law. The U.S. Supreme Court held that where state tort law remedies are available,

Heisey's second main contention is that the Alaska Constitution offers broader protections than the U.S. Constitution, implying that a federal constitutional remedy offers weaker relief than a state constitutional remedy. However, an alternative remedy need not be an exact match. The pertinent question is whether a § 1983 claim would provide *some* type of relief for Heisey, even if it is not the equivalent of the relief he would get under a state *Bivens* claim. That is the case here.

Facially, the federal constitutional provisions that Heisey cites either exactly or substantially match the wording of the Alaska Constitutional provisions he claims were violated. Thus, the rights that they guarantee are substantially the same. In his amended complaint, Heisey claimed that he had a "constitutional right under [a]rticle 1, [s]ection 12 ... not to be subject to cruel and unusual punishment. This right includes the right not to be subjected to the use of excessive force by Correctional Officers." Heisey acknowledges that the Eighth Amendment of the U.S. Constitution would allow him to bring a similar federal constitutional claim for excessive force. Both the federal and state constitutions read, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

The amended complaint alleges a second state constitutional violation—that the failure to train and supervise the officers, and the inadequacy of the regulations governing the "training, discipline, and supervision of Officers using force," violated Heisey's due process rights under article 1, section 7 of the Alaska Constitution, as well as his right to be "free from the use of excessive force" under article 1, section 12. Article 1, section 7, the Due Process Clause of the Alaska Constitution, states that "[n]o person shall be deprived of life, liberty, or property, without due process of law." The wording of the state provision mirrors the Fifth Amendment

of the U.S. Constitution. On appeal Heisey also argues that both article 1, section 14 of the Alaska Constitution and the Fourth Amendment of the U.S. Constitution protect against "the unreasonable seizure of a person through the use of excessive force."

By matching his state constitutional claims to federal constitutional claims, Heisey implicitly acknowledges that federal claims would, in fact, provide a remedy comparable to his state constitutional claims. While a § 1983 claim may not be a complete remedy, we hold that it is a sufficient "alternative remedy."

Finally, we note that our holding that the Attorney General's certification is judicially reviewable provides Heisey with at least one other possible remedy—a judicial challenge to the scope-of-employment certification.

## 2. The possibility that a § 1983 claim is now barred does not preclude it from being an "alternative remedy."

The superior court reasoned that because the State has asserted its sovereign immunity through certification of the officers' conduct, a § 1983 claim is now barred because the claim would proceed against the State, and the State is not a "person" for purposes of a § 1983 claim. Accordingly, the superior court decided that no alternate remedy exists, and that this may be a situation where a *Bivens* remedy is appropriate. The State argues that the court misinterpreted the law. Citing to *Lowell v. Hayes*,[87] the State contends that it does not matter if the resolution of the certification issue will ultimately bar the alternative remedy; the fact that an alternative remedy once existed is enough to bar a *Bivens* action. We agree with the State.

In *Lowell*, a plaintiff attempted to bring a state *Bivens* claim after his original defamation claim was dismissed.[88] Because the claim was dismissed, he argued he had no

a *Bivens* action will not be recognized in federal court. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72–74, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). The holding of *Hertz* applies similar reasoning, that the presence of a federal *or* state alternative remedy will block a *Bivens* cause of action.

**87.** 117 P.3d 745 (Alaska 2005).

**88.** *Id.* at 747.

alternative remedy.[89] We ruled that this argument is "facially untenable.... Surely the inadequacy of alternative remedies for alleged constitutional violations cannot be measured per se by the dismissal or defeat of those remedies." [90] We reaffirmed this holding in *Krause v. Matanuska–Susitna Borough,*[91] in which we held that even if potential statutory claims were time-barred, this did not preclude a finding that alternative remedies existed.[92] The existence of the remedy itself is enough to block a *Bivens*-type action, even if procedurally that remedy is no longer available.[93] Even if Heisey may no longer bring a § 1983 claim, an "alternative remedy" existed for *Bivens* purposes.[94]

### 3. We need not reach the question of whether the alleged constitutional violations are flagrant.

As the availability of an alternative remedy is dispositive on the issue of a *Bivens*-type remedy, we decline to reach the question of whether the constitutional violations are "flagrant."

## V. CONCLUSION

Because (1) the Attorney General's certification is subject to judicial review, (2) except as noted, Heisey's claims are barred by the State's immunity if the Attorney General's certification stands, and (3) Heisey does not have a *Bivens*-type remedy under the circumstances of this case, we VACATE the superior court's orders on Heisey's motion to amend and the State's motion to dismiss, and we REMAND for further proceedings consistent with this opinion. We direct the superior court on remand to review the Attorney General's certification prior to trial.

CHRISTEN, Justice not participating.

---

89. *Id.* at 754.

90. *Id.*

91. 229 P.3d 168 (Alaska 2010).

92. *Id.* at 180.

93. *Id.* at 175.

94. On remand, Heisey is free to amend his complaint to add federal § 1983 claims on a relation-back basis.