# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

**September 2020 Term**

_____

No. 20-0183

_____

**FILED**
**November 18, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**CODY RYAN FIELDS,**
Petitioner

**V.**

**ROSS H. MELLINGER, Individually and in His Capacity as a
Deputy with the Jackson County, West Virginia, Sheriff's Department;
TONY BOGGS, Individually and in His Capacity as
the Sheriff of Jackson County, West Virginia; and
THE JACKSON COUNTY COMMISSION d/b/a
the JACKSON COUNTY SHERIFF'S DEPARTMENT,**
Respondents

_____

**Certified Question from the United States District Court
for the Southern District of West Virginia
The Honorable Thomas E. Johnston, Chief Judge
Civil Action No. 2:19-cv-00493**

**CERTIFIED QUESTION ANSWERED**

_____

**Submitted: October 27, 2020**
**Filed: November 18, 2020**

Lonnie C. Simmons
Luca D. DiPiero
DiPiero Simmons McGinley &
Bastress, PLLC
Charleston, West Virginia
Michael T. Clifford
Charleston, West Virginia
Attorneys for the Petitioner

Wendy E. Greve
Drannon L. Adkins
Pullin, Fowler, Flanagan, Brown &
Poe, PLLC
Charleston, West Virginia
Attorneys for the Respondents

**JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE HUTCHISON concurs and reserves the right to file a concurring opinion.**

**JUSTICE WORKMAN dissents and reserves the right to file a dissenting opinion.**

**SYLLABUS BY THE COURT**

1.      "'A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.'  Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998)."  Syllabus point 1, *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017).

2.      "Courts are not concerned with the wisdom or expediencies of constitutional provisions, and the duty of the judiciary is merely to carry out the provisions of the plain language stated in the constitution.  Syllabus point 3*, State ex rel. Casey v. Pauley*, 158 W. Va. 298, 210 S.E.2d 649 (1975).

3.      West Virginia does not recognize a private right of action for monetary damages for a violation of Article III, Section 6 of the West Virginia Constitution.

**Jenkins, Justice:**

The United States District Court for the Southern District of West Virginia presents the following certified question for resolution by this Court: "Does West Virginia recognize a private right of action for monetary damages for violations of Article III, Section 6 of the West Virginia Constitution?" We have considered the parties briefs and oral arguments, the appendix record submitted, and extensive legal authority on this issue. We conclude that there is no private right of action for monetary damages for a violation of Article III, Section 6 of the West Virginia Constitution. Accordingly, we answer the certified question in the negative.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On July 2, 2019, Cody Ryan Fields ("Mr. Fields") filed a complaint in the United States District Court for the Southern District of West Virginia ("district court") against Ross H. Mellinger, individually and in his capacity as a Deputy with the Jackson County, West Virginia, Sheriff's Department ("Deputy Mellinger"); Tony Boggs, individually and in his capacity as the Sheriff of Jackson County, West Virginia; and the Jackson County Commission d/b/a the Jackson County Sheriff's Department ("Sheriff's Department") (collectively "the Defendants"). The following state law claims are asserted by Mr. Fields in his complaint: constitutional tort, for violations of Article III, Sections 6, 10, and 17 of the West Virginia Constitution; negligence in the hiring, retention, and/or supervision of employees; battery; and outrageous conduct/intentional infliction of mental,

1

physical, and emotional distress.  Additionally, the following federal law claims are asserted in the complaint by Mr. Fields:  excessive force under United States Code title 42 section 1983; *Monell*[1] and supervisory liability under United States Code title 42 section 1983; and unlawful conspiracy under United States Code title 42 sections 1983 & 1985.

In his complaint, Mr. Fields alleged the following facts:

> 5.     On or about the 20th day of September[] 2017, defendant [Deputy] Mellinger, under the auspices of executing a search warrant upon the residence of Joseph Farrel . . . near Ripley, Jackson County, West Virginia, confronted [Mr. Fields] in a detached garage with the front bay door open and told [Mr. Fields] to get on the ground.  [Mr. Fields] was standing with his hands in the air and bending at the waist to get down when [Deputy] Mellinger, using deadly and excessive force, and not utilizing lesser means of command such as pepper spray, viciously struck [Mr. Fields] in the face with the butt end of a shotgun, all of which was without probable cause or provocation, and without any resistance whatsoever, causing facial injuries and knocking out several of [Mr. Fields'] teeth . . . .  Thereafter, [Deputy] Mellinger told [Mr. Fields] that his teeth needed to come out anyway.

---

[1] *Monell* refers to *Monell v. New York City Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), which held that

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694, 98 S. Ct. at 2037-38, 56 L. Ed. 2d 611.

2

6. At the time of the attack by [Deputy] Mellinger, [Mr. Fields] was not under arrest, having committed no crime, he was being compliant, he was not attempting to flee, he was not attempting to assault or strike [Deputy] Mellinger[,] and he was not threatening to do so.

7. At the time [of the attack, Deputy] Mellinger had no reason to believe that [Mr. Fields] had committed or was committing any crime, in that [Mr. Fields] was situate in an open garage, detached from the residence [that] the defendant had a warrant to search and, apparently, did not search at that date and time. [Deputy Mellinger] had no reason to believe [Mr. Fields] was in possession of any weapons and never inquired of [Mr. Fields] whether he was in possession of any weapons prior to attacking him. Indeed [Deputy] Mellinger never inquired of [Mr. Fields] who he was and what he was doing in the garage.

According to the complaint, Mr. Fields was then placed under arrest for obstruction and simple possession. Mr. Fields repeatedly attempted to have a suppression hearing related to the charges, but the State's witnesses were continually unavailable. Accordingly, the charges were dismissed by the Jackson County Magistrate Court.

The Defendants ultimately filed a partial motion to dismiss, which, relevant to this certified question, sought dismissal of Mr. Fields' claim for relief under the West Virginia Constitution, asserting that state constitutional claims are not supported by the law. Following Mr. Fields' response to the motion, the Defendants' reply, and a telephonic conference, the district court took the Defendants' partial motion to dismiss under advisement and directed the parties to submit a proposal for certified question. By "Order of Certification" filed on March 4, 2020, the district court submitted its certified question

3

to this Court. We accepted the certified question and placed this matter on the docket for argument under Rule 20 of the West Virginia Rules of Appellate Procedure.

## II.

## STANDARD OF REVIEW

We exercise plenary review of a question certified by a federal district court: "'A de novo standard is applied by this Court in addressing the legal issues presented by a certified question from a federal district or appellate court.' Syllabus Point 1, *Light v. Allstate Ins. Co.*, 203 W. Va. 27, 506 S.E.2d 64 (1998)." Syl. pt. 1, *Martinez v. Asplundh Tree Expert Co.*, 239 W. Va. 612, 803 S.E.2d 582 (2017). *See also* Syl. pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. 133, 522 S.E.2d 424 (1999) ("This Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court."). Applying this standard, we proceed to answer the question herein certified.

## III.

## DISCUSSION

In this proceeding, we are presented with the following question certified by the district court:

> Does West Virginia recognize a private right of action for monetary damages for violations of Article III, Section 6 of the West Virginia Constitution?

4

Because our answer to this question requires constitutional analysis, we begin by reviewing this Court's role as it relates to matters of constitutional interpretation.

> This Court previously has recognized that
>
>> [a] constitution is the fundamental law by which all people of the state are governed. It is the very genesis of government. Unlike ordinary legislation, a constitution is enacted by the people themselves in their sovereign capacity and is therefore the paramount law. This basic organic law can be altered or rewritten only in the manner provided for therein.

*State ex rel. Smith v. Gore*, 150 W. Va. 71, 77, 143 S.E.2d 791, 795 (1965). For this reason, "[c]ourts are not concerned with the wisdom or expediencies of constitutional provisions, and the duty of the judiciary is merely to carry out the provisions of the plain language stated in the constitution." Syl. pt. 3, *State ex rel. Casey v. Pauley*, 158 W. Va. 298, 210 S.E.2d 649 (1975). *See also* Syl. pt. 3, *Diamond v. Parkersburg-Aetna Corp.*, 146 W. Va. 543, 122 S.E.2d 436 (1961) ("The object of construction, as applied to a written constitution, is to give effect to the intent of the people in adopting it."). Thus, as we recently acknowledged, the Court bears the "'task of interpreting the Constitution and the laws of this State as they exist.'" *State v. Smith*, ___ W. Va. ___, ___, 844 S.E.2d 711, 719 (2020) (quoting *W. Va. Bd. of Educ. v. Bd. of Educ. of the Cty. of Nicholas*, 239 W. Va. 705, 721, 806 S.E.2d 136, 152 (2017) (additional quotations and citation omitted)). In other words,

> [a]lthough this Court is vested with the authority "to construe, interpret and apply provisions of the Constitution, . . . [we] may not add to, distort or ignore the plain mandates thereof." *State ex rel. Bagley v. Blankenship*, 161 W. Va. 630, 643, 246

5

S.E.2d 99, 107 (1978). Thus, "[i]f a constitutional provision is clear in its terms, and the intention of the electorate is clearly embraced in the language of the provision itself, this Court must apply and not interpret the provision." Syl. pt. 1, *State ex rel. Trent v. Sims*, 138 W. Va. 244, 77 S.E.2d 122 (1953). On the other hand, "if the language of the constitutional provision is ambiguous, then the ordinary principles employed in statutory construction must be applied to ascertain such intent." *State ex rel. Forbes v. Caperton*, 198 W. Va. 474, 480, 481 S.E.2d 780, 786 (1996) (internal quotations and citations omitted).

*State ex rel. Morrisey v. W. Va. Office of Disc. Counsel*, 234 W. Va. 238, 255, 764 S.E.2d 769, 786 (2014). *See also* Syl. pt. 1, *Winkler v. State Sch. Bldg. Auth.*, 189 W. Va. 748, 434 S.E.2d 420 (1993) ("Questions of constitutional construction are in the main governed by the same general rules applied in statutory construction."). Even where a provision is found to be ambiguous, it "requires interpretation consistent with the intent of both the drafters and the electorate." *State ex rel. Brotherton v. Blankenship*, 157 W. Va. 100, 127, 207 S.E.2d 421, 436-37 (1973) (Neely, J., dissenting).

Turning to the question at hand, "[a]s in every case involving the application or interpretation of a constitutional provision, analysis must begin with the language of the constitutional provision itself." *State ex rel. Mountaineer Park, Inc. v. Polan*, 190 W. Va. 276, 283, 438 S.E.2d 308, 315 (1993). Under Article III, Section 6 of the West Virginia Constitution,

[t]he rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation,

6

particularly describing the place to be searched, or the person or thing to be seized.

Mr. Fields seeks monetary compensation under this provision for personal injuries allegedly resulting from the use of excessive force by officers of the Sheriff's Department. Patently absent from this provision is any allowance for a private right of action for monetary damages. Thus, we must determine whether a private right of action corresponds with the intent of the drafters and the electorate of our constitution.

Mr. Fields observes that, in two other contexts, this Court has acknowledged a private cause of action for damages arising from a constitutional violation. He first cites to this Court's opinion in *Fox v. Baltimore & Ohio R.R. Co.*, 34 W. Va. 466, 12 S.E. 757 (1890), in which it was held that,

> [i]n an action brought to recover damages under section 9 of Article III of the constitution, as compensation for permanent injury to real estate by the construction of a railroad upon a street adjacent to such property, it is proper for the owner to bring an action for trespass on the case, and he may count for permanent damages and recover the same according to the evidence, although, when the injury occurred, he was not in the actual occupancy of the property, but was in constructive possession of the same through his tenant under a lease.

Syl. pt. 1, *id.* The *Fox* Court, in turn, relied upon the case of *Johnson v. City of Parkersburg*, 16 W. Va. 402 (1880), in which the Court held that,

> [w]hen the Constitution forbids a *damage* to private property and points out no remedy, *and no statute gives a remedy for the invasion of the right* of property thus secured, the common law, which gives a remedy for every wrong, will furnish the appropriate action for the redress of such grievances.

7

Syl. pt. 3, *id*. (second emphasis added). Notably, unlike Article III, Section 6, which is at issue herein, Article III, Section 9, which the Court addressed in its prior holdings, guarantees "just compensation":

> "Private property shall not be damaged or taken for public use without just compensation; nor shall the same be taken by any company incorporated for the purpose of internal improvement until just compensation shall have been paid or secured to be paid to the owners; and, when private property shall be taken or damaged for public use or for the use of such corporations, the compensation to the owner shall be ascertained in such manner as may be prescribed by general law."

*Fox*, 34 W. Va. at 470, 12 S.E. at 759 (quoting W. Va. Const. art. III, § 9). Additionally, under the holding in *Johnson*, a remedy will be judicially created only where "no statute gives a remedy for the invasion of the right." Syl. pt. 3, in part, *Johnson*, 16 W. Va. 402. As we will explain in more detail below, alternate remedies for Mr. Fields' alleged injuries are available. Accordingly, we find this line of cases does not counsel us to create a private cause of action for a violation of Article III, Section 6 of the West Virginia Constitution.

Mr. Fields additionally points to a second occasion when this Court acknowledged a private cause of action for a constitutional violation. *See Hutchison v. City of Huntington*, 198 W. Va. 139, 479 S.E.2d 649 (1996). *Hutchison* addressed a violation of the Due Process Clause of Article III, Section 10 of the West Virginia Constitution, and held:

> Unless barred by one of the recognized statutory, constitutional or common law immunities, a private cause of action exists where a municipality or local governmental unit causes injury by denying that person rights that are protected

8

by the Due Process Clause embodied within Article 3, § 10 of the West Virginia Constitution.

Syl. pt. 2, *Hutchison*, 198 W. Va. 139, 479 S.E.2d 649. In reaching this conclusion, the *Hutchison* Court provided no analysis; instead, the Court merely observed that "[t]here is no dispute among the parties that a private cause of action exists where state government, or its entities, cause injury to a citizen by denying due process. To suggest otherwise, would make our constitutional guarantees of due process an empty illusion." *Id.* at 150, 479 S.E.2d at 660. The Court then found the plaintiff's constitutional claim was barred by statutory immunity. *Id.* Thus, we find little guidance from the *Hutchison* opinion to aid us in analyzing the certified question.[2]

In posing its certified question to this Court, the district court expressly requested clarification of this Court's decision in *Harrah v. Leverette*, 165 W. Va. 665, 271 S.E.2d 322 (1980), *superseded by statute on other grounds as recognized by W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 515 n.30, 766 S.E.2d 751, 774 n.30 (2014), as the United States District Courts, in endeavoring to interpret West Virginia law on the issue of whether a private cause of action for damages would be recognized for a

---

[2] Because *Hutchison* addresses violations of the due process clause and the instant matter addresses unreasonable search and seizure, we do not, by our decision today, disturb the *Hutchison* holding. However, as reflected in our ultimate decision in this case, we decline Mr. Fields' invitation to extend the *Hutchison* holding to claims for violations of Article III, Section 6 of the West Virginia Constitution.

constitutional violation, have sometimes relied upon *Harrah*.[3] *Harrah* involved an original

jurisdiction proceeding filed by inmates incarcerated at Huttonsville Correctional Center

---

[3] We note that the United States District Courts for the two West Virginia districts have addressed whether private causes of action for monetary damages would be recognized in West Virginia and are split in their answers to this question. *Compare Nutter v. Mellinger*, No. 2:19-CV-00787, 2020 WL 401790, at *6 (S.D.W. Va. Jan. 23, 2020) (explaining that "[i]t is true though that this court has previously found that Article III provisions of the West Virginia Constitution do not provide a private cause of action for damages, with the exception of § 10. . . . I agree and find that a private plaintiff cannot bring a claim for damages under Article III, § 6 of the West Virginia Constitution when there is not an independent statute authorizing such a cause of action."), *and Howard v. Ballard*, No. 2:13-CV-11006, 2015 WL 1481836, at *4 (S.D.W. Va. Mar. 31, 2015) (commenting that "a violation of Article III, § 5 of the West Virginia Constitution does not independently give rise to claims for money damages"), *and McMillion-Tolliver v. Kowalski*, No. 2:13-CV-29533, 2014 WL 1329790, at *2 (S.D.W. Va. Apr. 1, 2014) (concluding that "[t]he *Harrah* court did not include a cause of action under the state constitution for money damages among the remedies it listed. Without an independent statute authorizing money damages for violations of the West Virginia Constitution, the plaintiff's claim must fail."), *and Smoot v. Green*, No. CIV.A. 2:13-10148, 2013 WL 5918753, at *4-5 (S.D.W. Va. Nov. 1, 2013) (discussing claims against a state agency and supervisory defendants, as opposed to individuals, and finding that "[i]nasmuch as the decision in *Harrah* does not contemplate a damages award for Article III violations in this setting, it is ORDERED that, to the extent the claims under Article III seek monetary relief, they be, and hereby are, dismissed"), *with Barcus v. Austin*, No. 1:17CV122, 2018 WL 4183213, at *5 (N.D.W. Va. Aug. 31, 2018) (quoting Syllabus point 2 of *Hutchison* and pointing out that "[t]he parties do not dispute that West Virginia law recognizes a private cause of action, analogous to one arising under § 1983, for state constitutional violations"), *and Spry v. W. Va.*, No. 2:16-CV-01785, 2017 WL 440733, at *9 (S.D.W. Va. Feb. 1, 2017) (noting the dispute among federal district courts in West Virginia as to "[w]hether the West Virginia Constitution gives rise to a private right of action for money damages" and reasoning that, "[g]iven its ruling in *Hutchison*, the Court suspects that the [West Virginia Supreme Court of Appeals] would recognize a cause of action for money damages for the violation of other Article III rights"), *and Harper v. C.O. Joseph Barbagallo*, No. 2:14-CV-07529, 2016 WL 5419442, at *13 (S.D.W. Va. Sept. 27, 2016) (remarking that "[t]he Court is unconvinced that the Supreme Court of Appeals of West Virginia would refuse to recognize a private right of action under Section 5 of Article III when it has recognized such a right with regard to Section 10"), *and Ray v. Cutlip*, No. 2:13-CV-75, 2014 WL 858736, at *3 n.1 (N.D.W. Va. Mar. 5, 2014) (mentioning in a footnote that "West Virginia recognizes a private right of action for violations of the West Virginia Constitution," and quoting *Hutchison*).

10

seeking unconditional release from confinement based on cruel and unusual punishment. The *Harrah* Court held that "Article III, § 5 of the *West Virginia Constitution*, prohibits state prison administrators and correctional officers from using physical force on inmates, absent imminent and present danger of harm to others, themselves or state property." Syl. pt. 3, *Harrah*, 165 W. Va. 665, 271 S.E.2d 322. Additionally, the Court held that

> [a] person brutalized by state agents while in jail or prison may be entitled to:
>
> (a) A reduction in the extent of his confinement or his time of confinement;
>
> (b) Injunctive relief, and subsequent enforcement by contempt proceedings, including but not limited to, prohibiting the use of physical force as punishment, requiring psychological testing of guards, and ordering guards discharged if at a hearing they are proved to have abused inmates;
>
> (c) A federal cause of action authorized by 42 U.S.C. § 1983; and
>
> (d) A civil action in tort.

Syl. pt. 4, *Harrah*, 165 W. Va. 665, 271 S.E.2d 322. Several district court opinions have interpreted *Harrah* as not allowing a cause of action for money damages for violations of Article III of the West Virginia Constitution other than the Section 10 right of recovery recognized by *Hutchison*. *See, e.g.*, *Billiter v. Jones*, No. CV 3:19-0288, 2020 WL 118595, at *5 (S.D.W. Va. Jan. 9, 2020) (determining that money damages were not available for claims under Article III, Sections 7 and 16 of the West Virginia Constitution, but observing that "[t]he Supreme Court of Appeals did, however, authorize *injunctive relief* in *Harrah v. Leverette* for an article III, section 5 claim" (emphasis added)); *Murray v. Matheney*, No.

11

2:13-CV-15798, 2017 WL 4849113, at *8 (S.D.W. Va. Oct. 26, 2017) (granting summary judgment to defendants as to plaintiff's claims for money damages for violations of Article III, Section 5 of the West Virginia Constitution, because "monetary damages under the West Virginia Constitution [are] outside the scope of those contemplated by the *Harrah* court"); *McMillion-Tolliver v. Kowalski*, No. 2:13-CV-29533, 2014 WL 1329790, at *2 (S.D.W. Va. Apr. 1, 2014) (concluding that "[t]he *Harrah* court did not include a cause of action under the state constitution for money damages among the remedies it listed").

Mr. Fields contends that cases such as these have misinterpreted the *Harrah* decision. He focuses on remedy (d) in Syllabus point 4, which provides that a civil action in tort is among the remedies available to a person who has been brutalized by state agents while in jail or prison, and interprets it as creating an implied cause of action for damages for a violation of Article III, Section 5 of the West Virginia Constitution. We disagree. There simply is no language in *Harrah* adopting an implied cause of action for a constitutional violation. Rather, it is explained in the body of the opinion that "[a] single spontaneous attack by a guard may simply be a common law tort[.]" *Harrah*, 165 W. Va. at 677, 271 S.E.2d at 330. Thus, remedy (d) is merely acknowledging that, under the proper circumstances, a brutalized inmate might have a common law tort cause of action. Therefore, we find that the district courts that have concluded "[t]he *Harrah* court did not include a cause of action under the state constitution for money damages among the remedies it listed" have properly interpreted this case. *McMillion-Tolliver*, 2014 WL 1329790, at *2.

12

Having found no grounds to find the drafters and the electorate intended to create a cause of action for monetary damages for a violation of Article III, Section 6, from existing West Virginia precedent, we next consider how other courts have addressed this issue.

The leading case by the United States Supreme Court that recognized a constitutional tort[4] is *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999, 29 L. Ed. 2d 619 (1971). In *Bivens*, the Court recognized that a violation of the Fourth Amendment[5] to the United States Constitution "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." *Id.* at 389, 91 S. Ct. at 2001, 29 L. Ed. 2d 619. The Court made this finding despite the fact that "the Fourth Amendment does not in so many words provide for its enforcement by an award of money damages for

---

[4] "Constitutional torts, as the name implies, seek recovery of money damages for constitutional wrongs. Most commonly, these actions are brought under 42 U.S.C. § 1983[.]" *W. Va. Lottery v. A-1 Amusement, Inc.*, 240 W. Va. 89, 103, 807 S.E.2d 760, 774 (2017).

[5] Similar to Article III, Section 6 of the West Virginia Constitution, the Fourth Amendment to the United States Constitution provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

the consequences of its violation." *Bivens*, 403 U.S. at 396, 91 S. Ct. at 2004, 29 L. Ed. 2d 619. In analyzing whether to adopt an implied cause of action, the *Bivens* Court acknowledged the well-settled principle that, "'where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.'" *Id.* (quoting *Bell v. Hood*, 327 U.S. 678, 684, 66 S. Ct. 773, 777, 90 L. Ed. 939 (1946)). However, even in the absence of a federal statute that provided a general right to sue under the circumstances presented in *Bivens*,[6] the Court found that the case "involve[d] no special factors counseling hesitation in the absence of affirmative action by Congress." *Id*. at 396, 91 S. Ct. at 2005, 29 L. Ed. 2d 619. Also significant to the decision in *Bivens* was the lack of any alternate remedy for the plaintiff. *See id*. at 410, 91 S. Ct. at 2011-12, 29 L. Ed. 2d 619 (Harlan, J., concurring) ("It will be a rare case indeed in which an individual in Bivens' position will be able to obviate the harm by securing injunctive relief from any court. . . . For people in Bivens' shoes, it is damages or nothing.").[7]

---

[6] *See, e.g.*, *Ziglar v. Abbasi*, ___ U.S. ___, ___, 137 S. Ct. 1843, 1854, 198 L. Ed. 2d 290 (2017) (discussing *Bivens* and observing that "[t]he Court held that, even absent statutory authorization, it would enforce a damages remedy to compensate persons injured by federal officers who violated the prohibition against unreasonable search and seizures").

[7] In *Ziglar*, ___ U.S. at ___, 137 S. Ct. at 1854, 198 L. Ed. 2d 290, the United States Supreme Court explained that,

> [i]n 1871, Congress passed a statute that was later codified at Rev. Stat. § 1979, 42 U.S.C. § 1983. It entitles an injured person to money damages if a state official violates his or her constitutional rights. Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up

14

In the time since the *Bivens* decision was handed down, however, the Court

has been reluctant to extend its holding, and has expressed that,

> [g]iven the notable change in the Court's approach to recognizing implied causes of action, however, the Court has made clear that expanding the *Bivens* remedy is now a "disfavored" judicial activity. [*Ashcroft v. Iqbal*, 556 U.S. 662, 675, 129 S. Ct. 1937, 1948, 173 L. Ed. 2d 868 (2009)]. This is in accord with the Court's observation that it has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68, 122 S. Ct. 515, [520,] 151 L. Ed. 2d 456 (2001). Indeed, the Court has refused to do so for the past 30 years.

*Ziglar v. Abbasi*, ___ U.S. ___, ___, 137 S. Ct. 1843, 1857, 198 L. Ed. 2d 290 (2017).[8]  To

this end, the *Ziglar* Court observed that

---

> to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government.

[8] The *Ziglar* Court explained that,

> [i]n the decade that followed [*Bivens*], the Court recognized what has come to be called an implied cause of action in two cases involving other constitutional violations. In *Davis v. Passman*, 442 U.S. 228, 99 S. Ct. 2264, 60 L. Ed. 2d 846 (1979), an administrative assistant sued a Congressman for firing her because she was a woman. The Court held that the Fifth Amendment Due Process Clause gave her a damages remedy for gender discrimination. *Id.*, at 248-249, 99 S. Ct. 2264. And in *Carlson v. Green*, 446 U.S. 14, 100 S. Ct. 1468, 64 L. Ed. 2d 15 (1980), a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma. The Court held that the Eighth Amendment Cruel and Unusual Punishments Clause gave him a damages remedy for failure to provide adequate medical treatment. *See id.*, at 19, 100 S. Ct. 1468. These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself.

15

the Court declined to create an implied damages remedy in the following cases: a First Amendment suit against a federal employer, *Bush v. Lucas*, 462 U.S. 367, 390, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983); a race-discrimination suit against military officers, *Chappell v. Wallace*, 462 U.S. 296, 297, 304-305, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983); a substantive due process suit against military officers, *United States v. Stanley*, 483 U.S. 669, 671-672, 683–684, 107 S. Ct. 3054, 97 L. Ed. 2d 550 (1987); a procedural due process suit against Social Security officials, *Schweiker v. Chilicky*, 487 U.S. 412, 414, 108 S. Ct. 2460, 101 L. Ed. 2d 370 (1988); a procedural due process suit against a federal agency for wrongful termination, *FDIC v. Meyer*, 510 U.S. 471, 473-474, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994); an Eighth Amendment suit against a private prison operator, [*Correctional Services Corp. v. Malesko*, 534 U.S. 61, 63, 122 S. Ct. 515, 517, 151 L. Ed. 2d 456]; a due process suit against officials from the Bureau of Land Management, *Wilkie v. Robbins*, 551 U.S. 537, 547-548, 562, 127 S. Ct. 2588, 168 L. Ed. 2d 389 (2007); and an Eighth Amendment suit against prison guards at a private prison, *Minneci v. Pollard*, 565 U.S. 118, 120, 132 S. Ct. 617, 181 L. Ed. 2d 606 (2012).

*Ziglar*, ___ U.S. at ___, 137 S. Ct. at 1857, 198 L. Ed. 2d 290. In *Wilkie*, 551 U.S. 537, 127 S. Ct. 2588, 168 L. Ed. 2d 389, the Court set out a two-part analysis for determining the availability of a *Bivens* type action:

> our consideration of a *Bivens* request follows a familiar sequence, and on the assumption that a constitutionally recognized interest is adversely affected by the actions of federal employees, the decision whether to recognize a *Bivens* remedy may require two steps. In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. *Bush* [*v. Lucas*, 462 U.S. 367, 378, 103 S. Ct. 2404, 2411, 76 L. Ed. 2d 648 (1983)]. But even in the absence of an alternative, a *Bivens* remedy is a

*Ziglar*, ___ U.S. at ___, 137 S. Ct. at 1854-55, 198 L. Ed. 2d 290.

16

> subject of judgment: "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Bush*, *supra*, at 378, 103 S. Ct. [at 2411, 76 L. Ed. 2d 648].

*Wilkie*, 551 U.S. at 550, 127 S. Ct. at 2598, 168 L. Ed. 2d 389.

Relying on the Supreme Court's change in approach to recognizing an implied cause of action for monetary damages based upon a constitutional violation, numerous state courts have declined to adopt such a cause of action.[9] And, even though state courts have utilized somewhat varying approaches to address this issue, the existence of alternative remedies frequently is the deciding factor.[10] *See, e.g.*, *State, Dep't of Corr. v. Heisey*, 271 P.3d 1082, 1098 (Alaska 2012) (commenting that "the availability of an alternative remedy is dispositive on the issue of a *Bivens*-type remedy"); *Bd. of Cty. Comm'rs of Douglas Cty. v. Sundheim*, 926 P.2d 545, 553 (Colo. 1996) ("While it may be appropriate to recognize an implied state constitutional cause of action when there is no other adequate remedy, we agree . . . that where other adequate remedies exist, no implied

---

[9] The states are roughly split on recognizing a *Bivens*-type action for monetary damages resulting from the violation of a constitutional right. *See* Jennifer Friesen, *State Constitutional Law: Litigating Individual Rights, Claims, and Defenses* § 7-07, at 7-20 (4th ed 2006) ("State courts are about evenly divided whether state law should ever recognize an implied cause of action for damages directly under a state constitutional guarantee.").

[10] This same principle has been recognized in federal courts. *See Ziglar*, ___ U.S. at ___, 137 S. Ct. at 1865, 198 L. Ed. 2d 290 ("[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action."); *Bowman v. Sawyer*, No. 19-CV-1411-WJM-KMT, 2020 WL 6390992, at *4 (D. Colo. Nov. 2, 2020) (same).

remedy is necessary."); *Kelley Prop. Dev., Inc. v. Town of Lebanon*, 627 A.2d 909, 922 (Conn. 1993) (observing that "[t]he several sister jurisdictions that have addressed the issue of whether to recognize a state *Bivens* action have pursued varying methods of analysis, with varying results. In a significant number of cases, however, the focus has been on the presence or absence of an existing alternative remedy, either by way of statute or under the common law, to provide some measure of relief for the injured party."); *St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 537 (Ky. 2011) (declining to provide money damages for due process violations under state constitution because "adequate alternative remedies exist, as evidenced by the fact that Straub's complaint alleged four alternative theories of recovery against all the defendants."); *Provens v. Stark Cty. Bd. of Mental Retardation & Dev. Disabilities*, 594 N.E.2d 959, 965-66 (Ohio 1992) (holding that "public employees do not have a private cause of civil action against their employer to redress alleged violations by their employer of policies embodied in the Ohio Constitution when it is determined that there are other reasonably satisfactory remedies provided by statutory enactment and administrative process.").

In *Straub*, the Supreme Court of Kentucky observed that,

> [i]n *Bivens*, the Supreme Court originally considered "alternative remedies" to be those instance[s] in which Congress provided an alternative remedy. After Supreme Court decisions in *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001), and *Wilkie*, *any* alternative process that contains a "convincing reason" to refrain from recognizing a new cause of action can preclude a *Bivens* action.

18

*Straub*, 354 S.W.3d at 538 n.40. The *Straub* Court then reasoned that,

> [i]n the present matter, this opinion notes the availability of other remedies for the alleged violation of Straub's rights under the Kentucky Constitution—traditional tort actions. Based on the United States Supreme Court's narrowing acceptance of *Bivens* actions since 1980 and our application of the *Bivens* two-step inquiry to the facts before us, we reject Straub's alternative request to recognize a new tort cause of action under *Bivens*.

*Straub*, 354 S.W.3d at 538. Although the *Straub* Court stated that it applied the *Bivens* two-step inquiry in reaching its conclusion, the court did not set out its findings with respect to whether special factors existed to counsel hesitation against implying a *Bivens* cause of action, apparently finding the presence of adequate alternative remedies to be sufficient justification.

Similarly, in *Provens*, 594 N.E.2d 959, the Supreme Court of Ohio addressed whether a teacher employed by the state had a private cause of action for violations of the Ohio Constitution. The plaintiff in *Provens* failed to identify the constitutional rights allegedly violated, but based upon her allegations, the Ohio court inferred that she had claimed a violation of her right to free speech under Section 11, Article I of the Ohio Constitution. *Id.* at 961. The court explained that, "[e]ven though this court is empowered to grant relief not expressly provided by the legislature, and may grant relief by creating a new remedy, we shall refrain from doing so where other statutory provisions and administrative procedures provide meaningful remedies." *Id*. at 961-62. In response to the plaintiff's argument that the alternative remedies available were not "adequate and

19

meaningful," the *Provens* Court found otherwise. *Id*. at 963. Noting that alternate remedies were available through the Ohio Civil Rights Commission and through a grievance process that had been negotiated by plaintiff's employee bargaining organization, the *Provens* Court explained that,

> [w]hile the remedies provided the plaintiff here through the administrative process of a hearing before the [Civil Rights Commission] and through the arbitration process under the collective bargaining agreement do vary from the remedies that might be available through a civil proceeding, such difference shall not be controlling where, in the totality, it may be concluded that the public employee has been provided sufficiently fair and comprehensive remedies. In [*Bush v. Lucas*, 462 U.S. 367, 103 S. Ct. 2404, 76 L. Ed. 2d 648 (1983)], the United States Supreme Court clearly evidenced that alternative avenues providing a less than complete remedy for the wrong suffered were not sufficient to warrant the recognition of a cause of action for damages arising from a constitutional violation. 462 U.S. at 388, 103 S. Ct. at 2417, 76 L. Ed. 2d at 664.

*Provens*, 594 N.E.2d at 965. *See also Heisey*, 271 P.3d at 1096-98 (declaring that "a litigant must establish two requirements before we will consider a possible *Bivens*-type claim: that 'alternative remedies' do not exist; and that the constitutional violation is 'flagrant'"; finding that 42 U.S.C. § 1983 provided an alternate remedy; and concluding that "[e]ven if Heisey may no longer bring a § 1983 claim, an 'alternative remedy' existed for *Bivens* purposes" (quoting *Adkins v. Stansel*, 204 P.3d 1031, 1034 (Alaska 2009)); *Giraldo v. Dep't of Corr. & Rehab.*, 85 Cal. Rptr. 3d 371, 390 (Cal. Dist. Ct. App. 2008) (declining to recognize a constitutional tort for violation of the cruel or unusual punishment clause of the California Constitution, in part, because "there are adequate alternative remedies available for a claim such as that asserted by plaintiff here. First, we have concluded that

20

California law imposes on at least some prison personnel a duty to protect prisoners from foreseeable harm caused by other inmates, breach of which could give rise to a claim for negligence. Additionally, and as defendants point out, plaintiff had available a claim pursuant to 42 U.S.C. § 1983 for violation of the Eighth Amendment to the federal Constitution."); *Kelley Prop. Dev., Inc.*, 627 A.2d at 922 (declining to "construe our state constitution to provide a basis for the recognition of a private damages action for injuries for which the legislature has provided a reasonably adequate statutory remedy"); *Shields v. Gerhart*, 658 A.2d 924, 934 (Vt. 1995) ("We agree that it may be appropriate to imply a monetary damages remedy to enforce constitutional rights where the Legislature has fashioned no other adequate remedial scheme. Where the Legislature has provided a remedy, although it may not be as effective for the plaintiff as money damages, we will ordinarily defer to the statutory remedy and refuse to supplement it.").

Clearly, reasonable alternative remedies are available for a violation of Article III, Section 6 of the West Virginia Constitution. This is evidenced in the instant matter by the fact that Mr. Fields has asserted state law claims for negligence in the hiring, retention, and/or supervision of employees; battery; and outrageous conduct/intentional infliction of mental, physical, and emotional distress. He also has asserted federal claims for excessive force under United States Code title 42 section 1983; a *Monell*[11] claim and

---

[11] *See supra* note 1 for an explanation of a *Monell* claim.

supervisory liability under United States Code title 42 section 1983; and unlawful conspiracy under United States Code title 42 sections 1983 & 1985.

Based upon the foregoing discussion, and because alternate remedies are available for a violation of Article III, Section 6 of the West Virginia Constitution, we now hold that West Virginia does not recognize a private right of action for monetary damages for a violation of Article III, Section 6 of the West Virginia Constitution.[12] Applying this holding to the claims asserted by Mr. Fields, he cannot assert a private action for monetary damages based on a violation of Article III, Section 6 of the West Virginia Constitution because no such cause of action is recognized in this state.

---

[12] Mr. Fields additionally encourages this Court to conclude that a damages remedy is available for a violation of Article III, Section 6 of the West Virginia Constitution based upon the Restatement (Second) of Torts Section 874A (1979), which provides that,

> [w]hen a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

According to comment a to this section, "[a]s used in this Section, the term 'legislative provision' includes . . . constitutional provisions." Given our analysis in this certified question action, including our consideration of United States Supreme Court precedent, we decline to address Section 874A of the Restatement (Second) of Torts in our resolution of this case.

22

# IV.

## CONCLUSION

Based upon the foregoing analysis, we answer the question certified by the United States District Court for the Southern District of West Virginia in the negative as follows:

Question: "Does West Virginia recognize a private right of action for monetary damages for violations of Article III, Section 6 of the West Virginia Constitution?"

Answer: West Virginia does not recognize a private right of action for monetary damages for a violation of Article III, Section 6 of the West Virginia Constitution.

Certified Question Answered.